Paul LORENZ, Plaintiff,

v.

UNITED STATES NUCLEAR REGULA-
TORY COMMISSION, Defendant.

Civ. A. No. 80–K–1813.

United States District Court,
D. Colorado.

June 19, 1981.

Alan H. Friedman, Friedman, Hill & Rob-
bins, Denver, Colo., for plaintiff.

Nancy E. Rice, Asst. U. S. Atty., Denver,
Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This action arose after defendant did not
hire plaintiff and refused to furnish him a
complete copy of his NRC employment-ap-
plication file. Plaintiff exhausted his ad-
ministrative remedies and then filed this
complaint for declaratory and injunctive re-
lief and damages under the Privacy Act of
1974, 5 U.S.C. § 552a. This court has juris-
diction under 5 U.S.C. 552a(g)(1)(B).[1] The
parties have filed cross motions for summa-

---

1. Contrary to defendant's assertion, 28 U.S.C.
§ 2342(4) does not vest exclusive jurisdiction
for this action in the courts of appeals. Section
2342(4), which applies to "all final orders of the
Atomic Energy Commission made reviewable
by [42 U.S.C. § 2239]," now applies to the
Nuclear Regulatory Commission. Energy Re-

organization Act of 1974, 42 U.S.C. § 5841(f).
It still does not apply to the present action
concerning the disclosure of employment infor-
mation because 42 U.S.C. § 2239 deals exclu-
sively with Nuclear Regulatory Commission li-
censes and permits.

ry judgment and the matter is now ripe for determination.

The dispute centers on a document referred to by both parties as Document # 24. Document # 24 is an NRC Form 212 that was completed by a confidential source during the course of an NRC employment investigation of the plaintiff. In furnishing plaintiff with a copy of this form, defendant excised the name, address and signature of the source. Defendant also excised the "additional comments" section, but later furnished plaintiff with what it claims is an accurate copy of that section, omitting only the source's name.[2] Plaintiff requested that I examine Document # 24 *in camera* to determine whether the quotation is accurate and whether the deletion alters the quotation's meaning. This I decline to do, but I will first consider plaintiff's contention that the NRC did not have the right to withhold the confidential information, assuming that it accurately reported the non-confidential information.

### I. VALIDITY OF 10 C.F.R. § 9.61(b)(4)

■ Aside from requesting an *in camera* inspection of Document # 24, plaintiff argues that the NRC regulation on non-disclosure of confidential sources is invalid and therefore that under 5 U.S.C. § 552a(d) he is entitled to inspect the entire document. The applicable section of the Privacy Act, 5 U.S.C. § 552a(k)(5), allows an agency to promulgate rules to allow the non-disclosure of material compiled during employment investigations, but only to the extent that disclosure would reveal the identity of a confidential source. The section requires, however:

> At the time rules are adopted under this subsection, the agency shall include in the statement required under [5 U.S.C. § 553(c)], the reasons why the system of records is to be exempted from a provision of this section.

The relevant part of 5 U.S.C. § 553(c) provides:

> After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.

Pursuant to 5 U.S.C. § 552a(k)(5), the NRC adopted 10 C.F.R. § 9.61(4) (1980):

> Information exempted pursuant to 5 U.S.C. 552a(k)(5) shall be made available to an individual upon request except to the extent that the information would reveal the identity of a confidential source. Material that would reveal the identity of a confidential source shall be extracted or summarized in a manner which protects the source and the summary or extract shall be provided to the requesting individual.

Plaintiff argues that this regulation is invalid because the NRC's statement of "basis and purpose" was not included in the regulations, even though it was published in the Federal Register.[3] Although plaintiff's argument might be consistent with a literal

---

**2.** Defendant states that the "additional comments" section of Document # 24 states:

> Paul Lorenz is a reasonably well qualified technical individual. He is aggressive and enthusiastic. His termination from (deleted) resulted from his inability to work within an established organizational structure. Paul can best be described as a crusader.
> * Without a clear understanding of his proposed responsibilities at NRC, it is impossible to answer. However, from my general knowledge of NRC's scope, it is hard for me to believe that removing Paul from a laboratory environment and placing him in a structure where interpersonal relation may be important, would possibly represent a most untenable situation for all concerned.

The "*" apparently refers to the form's question, "How would you rate applicant in regard to potential for filling job for which applied?" I agree with plaintiff that the answer here is nonsensical.

**3.** "The proposed exemptions for portions of Recruiting, Examining and Placement Records and Equal Employment Opportunity Files are intended to protect the identity of confidants who furnish information regarding the eligibility or qualifications for Federal employment of individuals when such information is or was furnished under an expressed or implied promise that the identity of the confidant would be held in confidence." 40 Fed.Reg. 33833 (1975). Plaintiff does not challenge the adequacy of this statement, only the place of its publication.

reading of the statute, I find it is contrary to the statute's intent.[4]

■ In *Alabama Association of Insurance Agents v. Board of Governors*, 533 F.2d 224 (5th Cir. 1976), *vacated in part* (on other grounds), 558 F.2d 729 (5th Cir. 1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978), the court noted an agency's obligation under 5 U.S.C. § 553(c) to "publish a statement of reasons that will be sufficiently detailed to permit judicial review." *Id.* at 236 (quoting *National Nutritional Foods Association v. Weinberger*, 512 F.2d 688, 701 (2d Cir. 1975)). The court then found that regulations without a statement of basis and purpose have been upheld where the court deemed the basis and purpose to be obvious. *Id.* (quoting *Hoving Corp. v. FTC*, 290 F.2d 803 (2d Cir. 1961)). The court then summarized its approach in deciding whether to uphold agency regulations against a challenge of their adequacy under 5 U.S.C. § 553(c):

> Courts must have an adequate basis to engage in judicial review, but, as partners with the agencies in the effectuation of Congressional will through the administrative process, they do not function to strike down agency action because of merely formal or technical flaws. For this reason, a court must not only examine whether an agency's promulgation of a challenged regulation complies with the procedural requirement; it must also determine whether, in light of the nature and content of the regulation and of the underlying legislation, the extraneous material which may be available to explain the basis and purpose of the agency action, and the quantum of action taken in reliance on the regulation, any procedural flaw so subverts the process of judicial review that invalidation of the regulation is warranted.

*Id.* at 236–37 (citations omitted). The court then upheld the regulations, finding that their basis could be ascertained from various agency documents, even though it was not clear from the regulations themselves. *Id.* at 237. While I reject the notion of partnership in the quote, I find that an agency statement of basis and purpose published in the Federal Register is sufficient to satisfy the requirements of 5 U.S.C. § 553(c) in the present case.[5]

I note two other cases that support this result by implication. In *United States v. Frontier Airlines, Inc.*, 563 F.2d 1008 (10th Cir. 1977), the court considered the adequacy of a "basis and purpose" statement that was published in the Federal Register. Although the court noted that "[t]he Basis and Purpose Statement is a very significant portion of a regulation when an issue arises as to its application and scope," and found the statement to be inadequate, the court did not comment on the fact that the agency statement was published in the Federal Register and not in the Code of Federal Regulations. *Id.* at 1011. See also *Natural Resources Defense Council v. SEC*, 389 F.Supp. 689, 701 (D.D.C.1974).

## II. THE REQUESTED IN CAMERA INSPECTION

In order to determine whether defendant's summary of Document # 24 is accurate, I could demand that defendant furnish me the document for *in camera* inspection. 5 U.S.C. § 552a(g)(3)(A). *See, e. g., Mervin v. Bonfanti*, 410 F.Supp. 1205 (D.D.C.1976). That decision is, however, a matter of discretion. *Alford v. CIA*, 610 F.2d 348 (5th Cir. 1980). Because of the danger of federal judges becoming mere satraps, inspecting *in camera* at the pleasure of the Executive, I believe the price to be paid for any additional trustworthiness which might be obtained in this case is too high.

---

**4.** Because of my resolution of this issue, I do not determine what remedy is proper when an individual is harmed because an agency has failed to comply with statutory procedural requirements in adopting regulations.

**5.** Although the court in *Ryan v. Department of Justice*, 595 F.2d 954, 957 (4th Cir. 1979) stated

that the statement of basis and purpose must be included "in the rule itself," that court did not consider whether publication in the Federal Register would have been adequate.

To avoid litigation like this, agencies should include the statement of basis and purpose in the regulations, not just in the Federal Register.

There is no reason here to doubt the accuracy of the NRC summary of Document # 24. In a subscribed and sworn affidavit submitted to this court, NRC employee Joseph M. Felton stated that the summary was accurate. If that affidavit was willfully made inaccurate, Mr. Felton would be subject to prosecution for perjury. 18 U.S.C. § 1621. The Assistant U.S. Attorney submitted a signed brief to this court, which stated that the summary was an accurate transcription and deleted only the words "absolutely necessary to protect the identity of the confidential source." If she knew that this information were incorrect, she would be subject to disciplinary action. F.R.Civ.P. 11. Plaintiff seeks only to add a patina of judicial approval by having me also inspect Document # 24.

Since at least 1789, when our constitution was adopted, the notion of separation of powers has been fundamental to our government. For example, in 1792 congress passed a law that allowed the federal courts to place on a pension list those who had served the nation during the Revolutionary War, subject to revision by the Secretary of War and congress. Act of March 23, 1792, 1 Stat. 243. Because congress soon repealed this law, the Supreme Court never issued a plenary opinion on the law's constitutionality. The three circuit courts that did consider the matter all decided that the law attempted to force a non-judicial function upon the courts. *Hayburn's Case*, 2 U.S. (2 Dall.) 408, 409, 410 n.2 (1792). The Pennsylvania Circuit Court's opinion is representative:

> Upon due consideration, we have been unanimously of opinion, that, under this fact, the Circuit court held for the Pennsylvania district could not proceed:
>
> 1st. Because the business directed by this act is not of a judicial nature. It forms no part of the power vested by the constitution in the courts of the United States; the circuit court must, consequently, have proceeded without constitutional authority.
>
> 2d. Because, if, upon that business, the court had proceeded, its judgments (for its opinions are its judgments) might, under the same act, have been revised and controlled by the legislature, and by an officer in the executive department. Such revision and control we deemed radically inconsistent with the independence of that judicial power which is vested in the courts; and, consequently with that important principle which is so strictly observed by the constitution of the United States.

*Id.* If I were to find an inconsistency after examining Document # 24, then I would be at the mercy of the United States Attorney in seeing that the proper investigations and prosecutions were initiated. Separation of powers therefore encourages me to decline *in camera* inspection.[6]

Even more ancient than the separation-of-powers doctrine is the tradition that civil and criminal judicial proceedings be open to the public. *See Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15, 99 S.Ct. 2898, 2908, n.15, 61 L.Ed.2d 608 (1979).

> There can be no blinking the fact that there is a strong societal interest in public trials. Openness in court proceedings may improve the quality of testimony, induce unknown witnesses to come forward with relevant testimony, cause all trial participants to perform their duties more conscientiously, and generally give the public an opportunity to observe the judicial system.

*Id.* at 382, 99 S.Ct. at 2907 (citation omitted). Public judicial proceedings not only improve the quality of testimony, they also increase public acceptance of the judicial system. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569, 100 S.Ct. 2814, 2823, 65 L.Ed.2d 973, 985 (1980) (plurality opinion).

> People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.

---

**6.** My decision denies plaintiff the opportunity to have a disinterested party inspect Document # 24. At added expense to the plaintiff I could appoint a special master to make the inspection. The need for a neutral inspector does not necessarily imply a need for judicial inspection. Here, however, such added expense to review an innocuous document is not justified.

*Id.* at 572, 100 S.Ct. at 2825, 65 L.Ed.2d at 986. Although most of the public access controversy involves criminal proceedings, where there may be countervailing constitutional considerations, *see, e. g., Gannett Co. v. DePasquale,* 443 U.S. at 383, 99 S.Ct. at 2907, Justice Frankfurter has also noted that "justice must satisfy the appearance of justice." Accordingly, "due process demands appropriate regard for the requirements of a public proceeding ... for all adjudications through the exercise of the judicial power, barring narrowly limited exceptions such as may be required by the exigencies of war, or for the protection of children," *Levine v. United States,* 362 U.S. 610, 616, 80 S.Ct. 1038, 1042, 4 L.Ed.2d 989 (1960) (citations omitted).[7]

 ■ In the present case the countervailing consideration is not a constitutional one, but only the protection of an employment-investigation system that instigates and perpetuates confidentiality. Many of the reasons that cause our society to favor open trials apply equally to employment investigations. Both the reliability of the information and the public acceptance of agency employment decisions could be enhanced by subjecting the process to public scrutiny.[8] Because an *in camera* investigation both demeans the judicial system and distends an already cloyed review of an essentially meaningless document, I refuse to undertake it.[9]

### III. RESOLUTION OF THIS CASE

Plaintiff does not argue that the NRC failed to comply with the substantive provisions of 5 U.S.C. § 552a(k)(5) and 10 C.F.R. § 9.61(b)(4) in refusing to disclose the identity of its confidential source. I find that the NRC has complied in substance with the applicable statutes and regulations. *See Volz v. United States Department of Justice,* 619 F.2d 49 (10th Cir. 1980).

IT IS ORDERED that plaintiff's motion for summary judgment is denied. It is further

ORDERED that defendant's motion for summary judgment is granted. This complaint and civil action are hereby dismissed. Each party to bear his and its own costs.

**7.** *See also* A.B.A. Code of Judicial Conduct 3.A.(4):

> A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.

While this rule would not bar *in camera* inspection here, it demonstrates a general aversion to non-adversary proceedings which suggests that my view is not idiosyncratic.

**8.** While I favor making employment investigations public, and would personally give scant weight to the confidential, nonsensical statement in Document # 24, that is obviously a policy matter for the other branches of government to decide.

**9.** The applicable statute vests me with complete discretion to make this decision. I will defer consideration of statutes that clearly and expressly *require* me to conduct *in camera* investigations until such a case is presented.