Dr. Charles COE, Petitioner,

v.

UNITED STATES DISTRICT COURT FOR the DISTRICT OF COLORADO, Respondent,

Michael Vitek, Henry Fieger, M.D., Jack Klapper, M.D., Stephen Kozloff, M.D., Robert Lederer, M.D., Nelson Mohler, D.O., Fredrick Paquette, M.D., Christine Petersen, M.D., Roy Piper, D.O., Bruce Wilson, M.D., and John Carroll, Attorney, in their official capacities as members of the Colorado State Board of Medical Examiners; The Colorado State Board of Medical Examiners, an agency of the State of Colorado; J. D. MacFarlane, in his official capacity as the Attorney General for the State of Colorado, R. Michael Mullens, in his official capacity as an Assistant Attorney General for the State of Colorado, and Ann Sayvetz, in her official capacity as an Assistant Attorney General for the State of Colorado, Real Parties in Interest.

No. 82–1309.

United States Court of Appeals, Tenth Circuit.

April 21, 1982.

Rodney R. Patula of Pryor, Carney & Johnson, Englewood, Colo., for petitioner.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., and William A. Richardson, Asst. Atty. Gen., State of Colo., Denver, Colo., for real parties in interest.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

BARRETT, Circuit Judge.

Dr. Charles Coe appears here as petitioner under a fictitious name, aggrieved with threatened professional disciplinary proceedings based upon complaints lodged against him with the Colorado State Board of Medical Examiners (Board). Dr. Coe filed a complaint for injunctive and declaratory relief with the District Court pursuant to 42 U.S.C.A. § 1983 to restrain the Board and the Colorado Attorney General from proceeding with a public hearing upon a formal disciplinary complaint challenging Coe's right to continue to practice medicine in Colorado. The complaint against Dr. Coe involves allegations of professional misconduct, specifically charges of sexual or immoral improprieties.

The District Court dismissed Dr. Coe's complaint and motion to file an amended complaint on the ground that Dr. Coe may not proceed in this action under a fictitious name. Furthermore, had Dr. Coe elected to file an amended complaint pursuant to his true, proper name, the District Court indicated that it may not entertain his § 1983 action predicated on his alleged deprivation of due process rights arising under the Fourteenth Amendment to the United States Constitution, i.e., irreparable harm to himself, his reputation and his property interests. The District Court, per footnote, in its March 4, 1982, order stated:

> Until such time as an amended complaint [with true, proper name of Coe set forth as party plaintiff] is filed the jurisdictional issue is not ripe for decision. It should be noted, however, that federal courts are hesitant to become involved in operations of state boards and agencies. It would seem that if Dr. Coe wishes to challenge the procedures of a state board the proper place to begin would be in the state court.

Following the District Court's order of dismissal of March 4, 1982, refusing to permit leave to prosecute this § 1983 action

under a fictitious name and the March 9, 1982, order denying plaintiff's motion to file amended complaint [wherein true, proper name would be used] with leave to file amended complaint and other pleadings under seal, Dr. Coe filed a petition for writ of mandamus or prohibition here. He alleges that the District Court's orders constitute a clear abuse of discretion which can only be remedied by this court.

### Standard of Our Review

In *United States v. Winner*, 641 F.2d 825 (10th Cir. 1981), we stated:

"Mandamus is an extraordinary writ, and the requirements for its issuance are strict." *State Farm Mut. Auto. Ins. v. Scholes*, 601 F.2d 1151, 1154 (10th Cir. 1979). While "a simple showing of error may suffice to obtain a reversal on direct appeal, to issue a writ of mandamus under such circumstances 'would undermine the settled limitations upon the power of an appellate court to review interlocutory orders.'" *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980) (per curiam), *quoting, Will v. United States*, 389 U.S. 90, 98 n. 6, 88 S.Ct. 269, 275 n. 6, 19 L.Ed.2d 305 (1967).

The "traditional use of the writ in aid of appellate jurisdiction ... has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). We have traditionally exercised extreme caution in granting writs of mandamus—the petitioning party bearing "the burden of showing that its right to issuance of the writ is 'clear and undisputable.'" *Bankers Life and Casualty Company v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953), *quoting United States v. Duell*, 172 U.S. 576, 582, 19 S.Ct. 286 [287], 43 L.Ed. 559 (1899). As the Court recently emphasized in *Allied Chemical Corp., supra*, "[o]nly exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy." *See Will v. Calvert Fire Insurance Company*, 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978).

641 F.2d at pp. 830, 831.

### Background

The issue presented here is whether the District Court abused its discretion in refusing petitioner, Dr. Coe, leave to prosecute his claims of constitutional deprivations without first having to disclose his true identity. Dr. Coe avers that disclosure of his true identity would cause irreparable and immediate destruction of his property and liberty interests which he seeks to protect. Stated another way, Dr. Coe contends that the District Court has effectively foreclosed his right to a fair or meaningful opportunity to present his federal constitutional claims in federal court.

The District Court, in the March 4, 1982, order, denying Dr. Coe's mandatory injunction against the Board and the Colorado Attorney General found/concluded, in part, as follows:

... Dr. Coe has been the subject of an investigation for alleged violations of the Colorado Medical Practice Act, C.R.S. 1973 §§ 12–36–101, *et seq.* The Attorney General has prepared a formal complaint to submit to the Board which will conduct a hearing on the matter. Under the Board's procedures, when the complaint is filed, the allegations will be made public.

Plaintiff [Dr. Coe] asserts that the Board has agreed to withhold publicizing the complaint on the condition that he stop practicing medicine until after the Board has heard and decided the case, a process estimated to require ninety days. Plaintiff contends that if he complies with that condition, many long-time patients will be denied his care and his practice will be irreparably damaged. He argues that imposing such a condition as the price of maintaining confidentiality of these proceedings amounts to an arbitrary, capricious and unreasonable interference with his right freely to pursue his

profession, a "property interest" he says is protected against such infringement by the due process clause of the Fourteenth Amendment.

Plaintiff asks that the Board be restrained from releasing the complaint to the public and that the state hearing be conducted confidentially. Defendants have moved to dismiss this action, claiming that the plaintiff has presented no federal question and, therefore, this Court lacks jurisdiction.

Before proceeding to the merits, I must decide the plaintiff's preliminary motion to file this action under the fictitious name, Dr. Charles Coe. Rule 10(a) of the Federal Rules of Civil Procedure lays down the general rule that a complaint "shall include the names of all the parties ..." Permission to proceed under a fictitious name should be granted only in exceptional circumstances where the interest of justice requires anonymity. *Doe v. Deschamps*, 64 F.R.D. 652 (D.Mont. 1974). Judge Kane of this Court recently denied a plaintiff's request for confidentiality, emphasizing the importance of maintaining public access to proceedings. *Doe v. United States*, 93 F.R.D. 483, No. 82–K–64 (D.Colo. Feb. 2, 1981); *See also, Lorenz v. NRC*, 516 F.Supp. 1151 (D.Colo.1981).

Members of the public, including the plaintiff's present and potential patients, have a significant interest in free access to the facts and this Court proceeding. While I understand and am sympathetic to the plaintiff's desire for anonymity in view of the allegations against him, I find that this interest in privacy is outweighed by the public interest. Therefore, the plaintiff will not be permitted to proceed with this action under a fictitious name. If he wishes to proceed with this case, he shall amend his complaint within five days after the date of this Order to state the names of all parties in interest ....

Thereafter, plaintiff filed a motion for an order (1) allowing him to file an amended complaint identifying him by proper name, but under seal of the court so as to preclude disclosure of his true identity to anyone not a defendant or counsel for a defendant until further order of the court and (2) allowing plaintiff, and compelling all other parties, to file all subsequent pleadings in the case under seal of the court. This motion was denied by minute order of the District Court.

### Right to Prosecute Action Under Fictitious Name

A license to practice medicine is, of course, a valuable property right entitled to due process and other constitutional protections. 54 A.L.R. 393; 44 A.L.R.3d 1. The state has the right and power to impose conditions on the right to practice medicine, and a license may be revoked for good cause. 93 A.L.R.2d 1398. *Colorado State Bd. of Medical Exmrs. v. Jorgensen*, 198 Colo. 275, 599 P.2d 869 (1979); *Glenn v. Colorado State Bd. of Medical Exmrs.*, 131 Colo. 586, 284 P.2d 230 (1955).

In *Sapero v. State Bd. of Medical Exmrs.*, 90 Colo. 568, 11 P.2d 555 (1932) it was recognized that the most common ground for statutory revocation or suspension of a license to practice medicine was immoral, unprofessional or dishonorable conduct.

The Colorado State Board of Medical Examiners consists of nine (9) physician members and two members from the public at large. C.R.S. 1973, 12–36–103. In *Doran v. State Bd. of Medical Exmrs.*, 78 Colo. 153, 240 P. 335 (1925) the court observed that the state board of medical examiners is presumed to know better than laymen the ethics of their profession and that which renders one unfit to engage or continue in the practice of medicine.

In the instant case, it is important to note that prior to the initiation of Dr. Coe's § 1983 action in the district court, the inquiry panel of the Board had, after detailed investigative procedures mandated pursuant to C.R.S. 1973, 12–36–118, (following complaints charging conduct unbecoming a person licensed to practice medicine or detrimental to the best interests of the public) made a reasonable cause determination that the investigation disclosed facts warranting

further proceedings by formal complaint. Accordingly, the complaints were referred to the Colorado Attorney General for filing of a formal complaint. C.R.S. 1973, 12–36–118(4)(c)(IV). Thereafter, detailed discussions followed between attorneys for the Board and attorneys for Dr. Coe. The Board's hearing panel rejected Dr. Coe's request that the hearing on the formal complaint be conducted in a non-public setting, apparently permissible pursuant to the power granted to Board by the Colorado legislature to conduct such hearings ". . . exempt from the provisions of any law requiring that proceedings of the board be conducted publicly or that . . . records of the board with respect to action . . . taken . . . be open to public inspection." C.R.S. 1973, 12–36–118(10), as amended. Even though the Board denied Dr. Coe's request, it did agree to allow the proceedings on the formal complaint to be conducted in a non-public setting if Dr. Coe would agree to surrender his license to practice medicine in the State of Colorado pending the outcome of the proceedings. Dr. Coe rejected the offer. The Board represents that this proposal was advanced in order to protect the public's interest during the pendency of the hearing-proceeding and to grant Dr. Coe's request for anonymity.

Dr. Coe rejected the Board's proposal and instituted the instant § 1983 suit. He contends here that the Board's proposal seeks to coerce him into a suspension of his right to practice medicine by conditioning his anonymity during the hearing upon his "voluntary" suspension of his practice. He argues that should he "voluntarily" agree to suspend his practice ". . . and does so abruptly and immediately, his practice and ability to practice medicine in Colorado in the future will again be permanently destroyed because of the unique circumstances and nature of that practice." Petition for Writ of Mandamus or Prohibition, pp. 6, 7.

■ Every pleading must contain the names of the parties thereto, if these are known.[1] In the federal courts it is held that the "real party in interest" is the one who, under applicable substantive law, has the legal right to bring the suit. *Boeing Airplane Co. v. Perry*, 322 F.2d 589 (10th Cir. 1963), *cert. denied*, 375 U.S. 984, 84 S.Ct. 516, 11 L.Ed.2d 472 (1964). There is no provision in the Federal Rules of Civil Procedure for suit against persons under fictitious names, and there are likewise no provisions for anonymous plaintiffs. In *Lindsey v. Dayton-Hudson Corp.*, 592 F.2d 1118 (10th Cir. 1979) this court observed, *inter alia* :

This use of pseudonyms concealing plaintiffs' real names has no explicit sanction in the federal rules. Indeed it seems contrary to Fed.R.Civ.P. 10(a) which requires the names of all parties to appear in the complaint. Such use obviously may cause problems to defendants engaging in discovery and establishing their defenses, and in fixing res judicata effects of judgments. Yet the Supreme Court has given the practice implicit recognition in the abortion cases, *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973), with minimal discussion. Most of the cases permitting the practice have involved abortion, birth control, and welfare prosecutions involving abandoned or illegitimate children. We have found only a few cases where the propriety of the technique was discussed.

*Doe v. Deschamps*, 64 F.R.D. 652 (D.Mont.1974) cites most of the cases. It holds that the public generally has a right to know, refuses to permit it except in unusual cases, and rules that it will not be permitted in an action involving plaintiff's future professional and economic life. *Roe v. State of New York*, 49

1. U.S.C.A. Rules of Civil Procedure, rule 10(a) provides: "Every pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a). In the complaint the title of the action shall include the names of all the parties, but in other pleadings it is sufficient to state the name of the first party on each side with an appropriate indication of other parties."

F.R.D. 279 (S.D.N.Y.1970), concluded that where only fictitious names were used for plaintiffs the filing of the complaint would be ineffective to commence an action. It recognized that if an action were commenced properly, the court could issue protective orders in appropriate cases to shield the identity of the plaintiffs. *Roe v. Ingraham*, 364 F.Supp. 536, 541 n.7 (S.D.N.Y.1973), recognized the procedure as proper where "if plaintiffs are required to reveal their identity prior to the adjudication of the merits of their privacy claim, they will already have sustained the injury which by this litigation they seek to avoid." *Doe v. Boyle*, 60 F.R.D. 507 (E.D.Va.1973), refused to permit a suit under the tax laws to be carried on in a fictitious name because it involved personal privileges under the Fifth Amendment. Additionally the court was concerned that after judgment numerous persons might claim to be John Doe.

While the issue is not free from doubt we think all cases we reviewed implicitly, at least, recognize that identifying a plaintiff only by a pseudonym is an unusual procedure, to be allowed only where there is an important privacy interest to be recognized. It is subject to a decision by the judge as to the need for the cloak of anonymity. . . .

592 F.2d at p. 1125.

In *Southern Methodist University Ass'n v. Wynne & Jaffe*, 599 F.2d 707 (5th Cir. 1979), the court held that neither the Federal Rules of Civil Procedure nor Title VII make provision for plaintiffs to proceed anonymously. The court discussed the special circumstances whereby courts have allowed plaintiffs to use fictitious names, in part as follows:

> . . . "[W]here the issues involved are matters of a sensitive and highly personal nature," such as birth control, [*Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961)] abortion, [*E.g., Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Mundy*, 7 Cir., 1975, 514 F.2d 1179; *Doe v. General Hospital of District of Columbia*, 1970, 140 U.S.App.D.C. 153, 434 F.2d 427] homosex-

uality [*E.g., Doe v. Department of Transportation Federal Aviation Administration*, 8 Cir., 1969, 412 F.2d 674 (challenge to denial of airman medical certificate on grounds of homosexual activity and prior sodomy conviction); *Doe v. Commonwealth's Attorney for City of Richmond*, E.D.Va., 1975, 403 F.Supp. 1199 (constitutional challenge to state sodomy statute as applied to consenting homosexual activity); *Doe v. Chafee*, N.D.Cal., 1973, 355 F.Supp. 112 (challenge to dishonorable discharge from Navy on ground of homosexual activity)] or the welfare rights of illegitimate children or abandoned families, [*E.g., Doe v. Carleson*, N.D.Cal., 1973, 356 F.Supp. 753; *Doe v. Gillman*, N.D. Iowa, 1972, 347 F.Supp. 482 (challenges to right of state welfare departments to require cooperation of AFDC recipients in obtaining convictions of spouses for nonsupport); *Doe v. Shapiro*, D.Conn., 1969, 302 F.Supp. 761 (challenge to state welfare department regulation providing for termination of welfare payments to illegitimate children if mother refuses to disclose name of child's father)] the normal practice of disclosing the parties' identities yields "to a policy of protecting privacy in a very private matter." *Id.* However, the cases affording plaintiffs anonymity all share several characteristics missing here. The plaintiffs in those actions, at the least, divulged personal information of the utmost intimacy; many also had to admit that they either had violated state laws or government regulations or wished to engage in prohibited conduct. [*See, e.g., Roe v. Wade, supra; Doe v. Commonwealth's Attorney for City of Richmond, supra; Doe v. Shapiro, supra.*] Here, by contrast, to prove their case A–D need not reveal facts of a highly personal nature or express a desire to participate in proscribed activities. Furthermore, all of the plaintiffs previously allowed in other cases to proceed anonymously were challenging the constitutional, statutory or regulatory validity of government activity. While such suits involve no injury to the Government's

"reputation," the mere filing of a civil action against other private parties may cause damage to their good names and reputation and may also result in economic harm. Defendant law firms stand publicly accused of serious violations of federal law. Basic fairness dictates that those among the defendants' accusers who wish to participate in this suit as individual party plaintiffs must do so under their real names.

Plaintiffs argue that disclosure of A–D's identities will leave them vulnerable to retaliation from their current employers, prospective future employers and an organized bar that does "not like lawyers who sue lawyers." In our view, A–D face no greater threat of retaliation than the typical plaintiff alleging Title VII violations, including the other women who, under their real names and not anonymously, have filed sex discrimination suits against large law firms. *See, e.g., Kohn v. Royall, Koegel & Wells,* S.D.N.Y.1973, 59 F.R.D. 515, *appeal dismissed,* 2 Cir., 1974, 496 F.2d 1094.

Because we find neither an express congressional grant of the right to proceed anonymously nor a compelling need to "protect[ ] privacy in a very private matter," *Doe v. Deschamps, supra,* 64 F.R.D. at 653, we hold that these Title VII plaintiffs may not sue under fictitious names and therefore affirm the district court's order requiring disclosure of A–D's identities by proper pleadings. 599 F.2d at pp. 712–713.

The legislative declaration creating the Board, C.R.S.1973, 12–36–102, states:

The general assembly declares it to be in the interest of public health, safety, and welfare to enact laws regulating and controlling the practice of the healing arts to the end that the people shall be properly protected against unauthorized, unqualified, and improper practice of the healing arts in this state, and this article shall be construed in conformity with this declaration of purpose.

It is said that "No other ground for revocation is invoked as frequently, perhaps, as 'unprofessional,' 'dishonorable,' or 'immoral' conduct in connection with the practice of medicine . . . in which the licensee in question is engaged." 61 Am.Jur.2d, § 82, p. 224, Physicians, Surgeons, Etc. The specific acts or conduct must show that the licensee is intellectually or morally incompetent to practice the profession or that the acts committed are of a nature likely to jeopardize the interest of the public, in contrast to trivial reasons or a mere breach of generally accepted ethics of the profession. 93 A.L.R.2d 1398; *Chenoweth v. State Board of Medical Examiners,* 57 Colo. 74, 141 P. 132 (1913). There are a number of cases which have held that specific facts established such immoral or improper conduct on the part of a physician or dentist toward a female patient as to justify board revocation of a license to practice. 15 A.L.R.3d 1179.

In light of the statutory power vested in the Board, it is unreasonable to assert that the Board acted in violation of Dr. Coe's right of due process of law. The Board's determination not to proceed with the formal proceeding against Dr. Coe under circumstances closed to the public was not violative of his due process rights and certainly not an abuse of the Board's discretion. Further, the Board's offer to close the proceedings to public scrutiny subject to Dr. Coe's voluntary suspension of the practice of medicine pending the proceeding was generous and designed to protect the public. No licensee has a "right" to a secret, closed nonpublic hearing before the Board. This is a matter within the Board's statutory authority, subject to its sound discretion in the balancing of public and private interests. *See FCC v. Schreiber,* 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965).

We are not persuaded, as urged by petitioner, that our opinion in *Crystal Grower's Corp. v. Dobbins,* 616 F.2d 458 (10th Cir. 1980) dictates that the relief requested of the District Court be granted. In *Crystal Grower's* we held that documents filed in our court involving the attorney-client privilege or the work product doctrine could, in our discretion, be placed under seal for a

period of five years. This order was specifically predicated on our discretionary power to control and seal records and files in our possession if we determine, as we there did, that the interest of the party-plaintiffs outweighs the public interest. We pointedly observed:

> Plaintiffs have a significant interest in preventing public disclosure of the documents at issue in this case. First, disclosure of the contents of communications between themselves and their attorneys and of reports prepared by their attorneys would effectively nullify their claim of privilege without a hearing on the merits. Second, because of the pending private antitrust actions in which American Crystal is a party-defendant, plaintiffs in those actions might obtain information that would be nondiscoverable absent a determination that the documents were not privileged.

616 F.2d at p. 461.

In our view, there is no pertinent analogy to be drawn between the facts presented in *Crystal Grower's* and those in the instant case. *Crystal Grower's* involved non-disclosure, secrecy considerations arising from invocation of the attorney-client privilege and the work product doctrine, when there were no competing public interests. In the case at bar, there can be no valid question but that a legitimate public interest in disclosure exists. The issue is one of weighing the scales between the public's interest and the rights to privacy advanced by Dr. Coe.

We thus hold that the District Court did not err in finding that Dr. Coe's interest in privacy is outweighed by the public inter-est. It is our view that by balancing the need advanced by Dr. Coe to maintain individual and professional privacy rights against the right of the public to know all of the facts surrounding the formal proceedings posited with the Board, the privacy interest does not outweigh the public's interest.[2]

The petition for writ of mandamus or prohibition is denied.

McKAY, Circuit Judge, concurring:

I fully concur in the court's opinion except for footnote 2 which I understand to be dicta in any event.

---

**2.** We share the District Court's expressed concern of federal court involvement in operations of state boards and agencies, and we agree with the Court's observation that Dr. Coe should have initiated his challenge to Board's procedures in state court. This is in keeping with the principle of comity and the fundamental premise of judicial federalism which recognizes that both federal and state courts have a duty to enforce the Constitution. State courts have concurrent jurisdiction of actions under 42 U.S.C.A. § 1983. *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980). In *Eisen v. Eastman*, 421 F.2d 560, 568 (2d Cir. 1969), *cert. denied*, 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970) the Court observed, *inter alia*:

> "[T]he consequences of compelling federal courts to pass upon all complaints of unconstitutional acts by state and local officials at the lowest level, without any requirement of appeal to higher ones, would be so destructive of proper concepts of federalism and so needlessly burdensome to the federal courts that it is appropriate to examine whether the decisions [of the Supreme Court of the United States] have not been given a greater sweep than the Court intended." [Footnotes omitted].