JANE DOE, Plaintiff-Appellant, v. JOHN DOE, Defendant-Appellee.

First District (6th Division)   No. 1—95—1837

Opinion filed July 31, 1996.

Bruce S. Sperling and Mitchell H. Macknin, both of Sperling, Slater & Spitz, P.C., and Susan E. Loggans & Associates, P.C., both of Chicago, for appellant.

Corboy & Demetrio, P.C., of Chicago (Philip H. Corboy, Michael K. Demetrio, and David A. Novoselsky, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:
Plaintiff, Jane Doe, brought this action against defendant, John

Doe, alleging that John Doe sexually molested her over a period of approximately seven years while she was a minor. Plaintiff appeals from orders of the trial court prohibiting plaintiff from disclosing her name or defendant's name in any pleadings until further order of court.

Plaintiff filed her complaint on March 3, 1995, identifying herself as Jane Doe and identifying defendant as John Doe. Plaintiff alleged in her complaint that defendant, her uncle by marriage, sexually molested her from 1987 through approximately August 1993. Plaintiff was a minor when the alleged abuse occurred. She filed her action as an adult. Plaintiff asserts that on March 3, 1995, settlement with defendant was imminent. She filed a complaint, however, because on March 9, 1995, several legislative measures affecting personal injury litigation would go into effect in Illinois. Plaintiff also asserts that she used fictitious names in the complaint at defendant's request.

On March 7, 1995, defendant presented an *ex parte* emergency motion requesting an order prohibiting plaintiff from disclosing defendant's name in any pleadings filed in this litigation or otherwise filing any other type of lawsuit in which defendant's true identity is disclosed. Defendant pointed to section 2—401(e) of the Code of Civil Procedure (Code), which states that "[u]pon application and for good cause shown the parties may appear under fictitious names." 735 ILCS 2—401(e) (West 1992). The motion noted that plaintiff had previously chosen not to identify defendant in her complaint and claimed that she had since threatened to disclose his identity if he did not settle the matter. The motion further alleged that "disclosing John Doe's true name or identity would cause defendant embarrassment, humiliation and detriment to his reputation in the community and profession" and "would cause severe and permanent damage to defendant's wife and *** children." The trial court granted the *ex parte* motion, prohibiting plaintiff from filing any other action disclosing defendant's true name and from amending her complaint or filing any pleadings substituting "defendant's true name in place of the John Doe designation." A copy of the order was thereafter served upon plaintiff.

On March 8, 1995, plaintiff filed an emergency motion to vacate the *ex parte* order. On March 10, 1995, the trial court denied the motion without prejudice. On March 28, 1995, plaintiff filed a motion asking the court to spread her name of record and to require that all pleadings bear her correct name. On April 3, 1995, plaintiff moved to vacate the trial court's order of March 10, 1995, wherein the trial court had previously denied plaintiff's motion to vacate, and moved for reconsideration of her motion to vacate the *ex parte* order. On

April 6, 1995, the trial court vacated its order of March 10, and scheduled further argument on its order of March 7. On May 5, 1995, the trial court upheld its March 7 order and disallowed plaintiff's request to spread her name of record. Indicating that it was "hesitant to keep it this way forever," the court upheld its decision that both parties proceed with the litigation under fictitious names. On June 2, 1995, plaintiff filed her notice of interlocutory appeal.

On appeal, plaintiff contends that potential damage to defendant's reputation and alleged harm to members of his family are insufficient justifications for the trial court's order prohibiting plaintiff from disclosing her name or the identity of John Doe. Defendant initially responds that this court lacks jurisdiction over plaintiff's appeal. Additionally, relying on section 2—401(e) of the Code, defendant argues that the trial court did not abuse its discretion in ordering that the parties proceed under fictitious names. We first address defendant's jurisdictional arguments.

■ Supreme Court Rule 307 governs interlocutory appeals as of right. Subsection (a) of Rule 307 provides that "[a]n appeal may be taken to the Appellate Court from an interlocutory order *** granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." 155 Ill. 2d R. 307(a)(1). Subsection (b) provides:

"If an interlocutory order is entered on *ex parte* application, the party intending to take an appeal therefrom shall first present, on notice, a motion to the trial court to vacate the order. An appeal may be taken if the motion is denied, or if the court does not act thereon within 7 days after its presentation. The 30 days allowed for taking an appeal and filing the record begins to run from the day the motion is denied or from the last day for action thereon." 155 Ill. 2d R. 307(b).

Defendant argues that there is no appealable order before this court because the trial court's order does not constitute an injunction under Rule 307(a)(1). In the alternative, defendant argues, even if the order is injunctive, plaintiff's appeal is not timely under Rule 307(b). Defendant argues that, under Rule 307(b), the allowable time period for plaintiff to appeal expired 30 days after March 10, 1995, the date on which the trial court denied plaintiff's motion to vacate the *ex parte* order.

■ We disagree with both of these contentions. To determine what constitutes an appealable injunctive order under Rule 307(a)(1), we must look to the substance of the action, not its form. *In re a Minor*, 127 Ill. 2d 247, 537 N.E.2d 292 (1989); *In re Estate of Ohlman*, 259 Ill. App. 3d 120, 630 N.E.2d 1133 (1994). An injunction has been defined as " 'a judicial process, by which a party is required to do a

particular thing, or to refrain from doing a particular thing.' " *In re a Minor*, 127 Ill. 2d at 261, 537 N.E.2d at 298, quoting *Wangelin v. Goe*, 50 Ill. 459, 463 (1869). Illinois courts have broadly construed the meaning of the term "injunction" in determining jurisdictional questions under Rule 307(a)(1). *Minor*, 127 Ill. 2d at 261, 537 N.E.2d at 298. Here, the trial court has expressly prohibited plaintiff from identifying herself or defendant by name in any further pleadings in this or any other litigation. Contrary to defendant's argument, this order does not constitute merely a "ministerial" or "case management" order that is not appealable. Instead, we find the trial court's order to be injunctive and, therefore, appealable under Rule 307.

Nor do we find merit in defendant's contention that plaintiff's appeal is untimely. "An interlocutory order can be reviewed, modified, or vacated at any time before final judgment." *Catlett v. Novak*, 116 Ill. 2d 63, 68, 506 N.E.2d 586 (1987); *Kemner v. Monsanto Co.*, 112 Ill. 2d 223, 492 N.E.2d 1327 (1986). When an order is set aside, it leaves pleadings as if no order had ever been entered. *First National Bank v. Lambert*, 109 Ill. App. 3d 177, 440 N.E.2d 306 (1982). It is true that on March 10, 1995, the trial court denied plaintiff's motion to vacate the *ex parte* order. As plaintiff correctly points out, however, the March 10 order had no effect 30 days after its entry because it was vacated on April 6, 1995. It would therefore be impossible, and illogical, to obligate plaintiff to file her notice of appeal within 30 days of that order. Such a ruling would strip the trial court of its authority to review, modify, or vacate an interlocutory order at any time before final judgment. Under the facts here, the last day of action on plaintiff's motion to vacate the *ex parte* order was May 5, 1995. By filing her notice of appeal on June 2, 1995, plaintiff has timely appealed.

We now turn to the merits of this appeal. The issue as we see it is whether alleged potential harm to defendant's family and his reputation constitutes "good cause" to require both parties to proceed in this litigation under fictitious names, over plaintiff's objection, pursuant to section 2—401(e). 735 ILCS 5/2—401(e) (West 1992). This issue is one of first impression in Illinois.

■ At common law, the use of fictitious names in lawsuits was prohibited. *Bogseth v. Emanuel*, 166 Ill. 2d 507, 655 N.E.2d 888 (1995). Jurisdiction to sue unknown or fictitious persons must be obtained pursuant to some express statute. *Bogseth*, 166 Ill. 2d at 514, 655 N.E.2d at 892; *Hailey v. Interstate Machinery Co.*, 121 Ill. App. 3d 237, 459 N.E.2d 347 (1984). Those statutes that authorize the use of fictitious names must do so explicitly. *Bogseth*, 166 Ill. 2d at 514, 655 N.E.2d at 892. In Illinois, section 2—401 of the Code authorizes the

use of fictitious names under certain circumstances. Section 2—401 states as follows:

"§ 2—401. Designation of Parties—Misnomer. (a) The party commencing an action shall be called the plaintiff. The adverse party shall be called the defendant.

\*\*\*

(c) A party shall set forth in the body of his or her pleading the names of all parties for and against whom relief is sought thereby.

\*\*\*

(e) *Upon application and for good cause shown the parties may appear under fictitious names.*" (Emphasis added.) 735 ILCS 5/2—401 (West 1992).

Subsection (e) was added to section 2—401 in 1987 by Public Act 85—907. Pub. Act 85—907, art. II, § 1, eff. November 23, 1987. Although it has been in effect since 1987, we are aware of no Illinois case citing or interpreting section 2—401(e). There are Illinois cases, however, where one or more of the parties' identities were concealed through the use of fictitious names. *E.g., In re Petition of Kirchner,* 164 Ill. 2d 468, 649 N.E.2d 324 (1995) ("Jane and John Doe" used to identify adoptive parents of "Baby Richard" in suit brought by child's biological father); *Doe v. Lutz,* 281 Ill. App. 3d 630 (1996) ("Jane and John Doe," on behalf of their minor child, "Richard Doe," alleging that Lutz, a Catholic priest, sexually molested "Richard"); *Suppressed v. Suppressed,* 206 Ill. App. 3d 918, 565 N.E.2d 101 (1990) ("Suppressed" identifying an attorney and his client in a case determining whether sexual relations with the client constituted a breach of the attorney's fiduciary duty). Without mentioning section 2—401(e), the courts in *Doe v. Lutz* and *Suppressed v. Suppressed* provided brief explanations for the use of the pseudonyms. In a footnote to its caption, the *Doe v. Lutz* court noted:

"Throughout this opinion, we use for plaintiffs' actual names the pseudonyms under which these cases were filed. In response to our inquiry at oral argument on appeal, plaintiffs' counsel said that anonymity was not necessary to protect plaintiffs because there had been no act of sexual penetration. Plaintiffs subsequently requested anonymity based upon a concern for 'Richard's' present mental condition. We have opted to honor that request." *Doe v. Lutz,* 281 Ill. App. 3d at 630 n.1.

Likewise, early in its opinion, the *Suppressed v. Suppressed* court provided the following explanation:

"Prior to the filing of plaintiff's complaint, defendants filed a suit in chancery to obtain an order requiring that the complaint in this case be filed without revealing the names of the parties and that the court record be impounded. Such an order was

obtained *ex parte* on December 2, 1988. For this reason the case has proceeded under the above caption rather than the actual names of the parties." *Suppressed v. Suppressed,* 206 Ill. App. 3d at 920, 565 N.E.2d at 102.

In sum, our review of Illinois case law has turned up some cases where fictitious names were used, but no cases where this was expressly allowed pursuant to section 2—401(e). Only *Suppressed v. Suppressed* involved a situation where an adult defendant moved to conceal the identity of all parties involved. The granting of the defendant's *ex parte* motion, however, was not contested by the plaintiff on appeal, and, therefore, the appellate court in *Suppressed v. Suppressed* performed no analysis on what serves as a proper justification for the use of fictitious names. A look at other jurisdictions thus proves worthy at this juncture.

In the federal court system, parties are generally required to identify themselves in their respective pleadings. *Doe v. Frank,* 951 F.2d 320 (11th Cir. 1992); *Coe v. United States District Court,* 676 F.2d 411 (10th Cir. 1982); Fed. R. Civ. P. 10(a). This rule protects the public's legitimate interest in knowing all of the facts involved in a case, including the identities of the parties. *Doe v. Frank,* 951 F.2d at 322. Federal courts have permitted plaintiffs to proceed anonymously, however, in "exceptional" cases where a substantial privacy interest outweighs the customary presumption of openness in judicial proceedings. *Doe v. Frank,* 951 F.2d at 323; *Doe v. Stegall,* 653 F.2d 180 (5th Cir. 1981); *Lindsey v. Dayton-Hudson Corp.,* 592 F.2d 1118 (10th Cir. 1979). Such factual situations involved matters of a highly personal nature such as abortion (*Roe v. Wade,* 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973)), mental illness (*Doe v. Colautti,* 592 F.2d 704 (3d Cir. 1979)), homosexuality (*Doe v. Commonwealth's Attorney,* 403 F. Supp. 1199 (E.D. Va. 1975)), transsexuality (*Doe v. McConn,* 489 F. Supp. 76 (S.D. Tex. 1980)), and religion (*Doe v. Stegall,* 653 F.2d at 186). Nevertheless, where the stated purpose is to avoid personal embarrassment or potential damage to future professional or economic well-being, federal courts have denied requests to proceed anonymously. *Doe v. Frank,* 951 F.2d at 324; *Coe v. United States District Court,* 676 F.2d at 417-18; *Southern Methodist University v. Wynne & Jaffe,* 599 F.2d 707 (5th Cir. 1979).

In *Doe v. Frank,* the plaintiff alleged that he was wrongfully discharged from his employment with the United States Postal Service due to his alcoholism, and he sought to proceed anonymously to avoid "disapproval among many in his community." *Doe v. Frank,* 951 F.2d at 324. The Eleventh Circuit Court of Appeals held that "the fact that Doe may suffer some personal embarrassment, stand-

ing alone, does not require the granting of his request to proceed under a pseudonym." *Doe v. Frank*, 951 F.2d at 324. The court further stated:

"Lawsuits are public events. A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger or physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity. The risk that a plaintiff may suffer some personal embarrassment is not enough." *Doe v. Frank*, 951 F.2d at 324.

Turning to the law of other states, we have discovered that the reasoning in the above federal line of cases is largely followed. See, e.g., *T.S.R. v. J.C.*, 288 N.J. Super. 48, 671 A.2d 1068 (1996) (Kleiner, J., dissenting); *Doe v. Diocese Corp.*, 43 Conn. Supp. 152, 647 A.2d 1067 (1994); *Doe v. Shady Grove Hospital*, 89 Md. App. 351, 598 A.2d 507 (1991); *Doe v. Bodwin*, 119 Mich. App. 264, 326 N.W.2d 473 (1982). Two of these cases involved motions by defendants to proceed anonymously. *T.S.R. v. J.C.*, 288 N.J. Super. 48, 671 A.2d 1068; *Doe v. Diocese Corp.*, 43 Conn. Supp. 152, 647 A.2d 1067. In *Doe v. Diocese Corp.*, the plaintiff brought an action against a religious diocese and several churches alleging that he had been sexually molested by a clergyman for seven years since he was 12 years old. The plaintiff and the defendants sought to proceed anonymously. The plaintiff requested a pseudonym to protect the names of his family members, and, in addition, his therapist testified that public disclosure of the plaintiff's identity would cause a setback in his treatment for emotional problems arising from the abuse. The defendant institutions argued that public disclosure of highly sensitive, unproven allegations would undermine and harm the trust placed in them by members of their congregation. Addressing the plaintiff's request first, the superior court of Connecticut relied primarily on the testimony of the plaintiff's therapist in finding that he had demonstrated a substantial privacy interest that outweighed any public interest in disclosure of his identity. *Doe v. Diocese Corp.*, 43 Conn. Supp. at 161, 647 A.2d at 1072. The court, however, denied the request of the defendant institutions to proceed anonymously. The court found that the harm defendants argued would be caused by the plaintiff's allegations was speculative as to its nature and duration. The court explained:

"[W]hat is the limit to [defendants'] claim? Any charitable institution or religious institution sued because of the actions of its employees, servants or clergy could, presumably, come into court and claim party anonymity because of the harm disclosure

would do to its very worthwhile activities." *Doe v. Diocese Corp.*, 43 Conn. Supp. at 165, 647 A.2d at 1074.

With regard to its decision to grant the plaintiff's request to proceed anonymously but to deny that of the defendants, the court stated:

"[T]he fact that pseudonym status has been given to one party does not mean that the other party is entitled to identical treatment. The court must make its determination by weighing the request for anonymity of each party separately against the public interest in open access to courts." *Doe v. Diocese Corp.*, 43 Conn. Supp. at 162-63, 647 A.2d at 1073.

Another case involving a defense motion to proceed anonymously, and the case we have found to be most factually similar to the one at hand, was decided recently in New Jersey. *T.S.R. v. J.C.*, 288 N.J. Super. 48, 671 A.2d 1068 (1996) (Kleiner, J., dissenting). In *T.S.R. v. J.C.*, two adult plaintiffs brought separate actions against a minister (J.C.), his local church, and its hierarchy, alleging that J.C. sexually molested them as minors. The defendants requested that the case proceed against them secretly and anonymously, at least until the trial court ruled on the validity of their statute of limitations defense. The plaintiffs, however, wanted full disclosure of the identities of all parties involved. The trial court denied the defendants' request, and the appellate division of the Superior Court of New Jersey affirmed, with one justice dissenting.

Initially, the majority in *T.S.R. v. J.C.* rejected J.C.'s argument that nondisclosure of his identity was required by a New Jersey statute concerning civil suits arising from alleged sexual abuse. *T.S.R. v. J.C.*, 288 N.J. Super. at 58, 671 A.2d at 1071-72. The majority next turned to the minister's argument that, even if anonymity was not required, he had shown "sufficient good cause" to proceed under a fictitious name. Specifically, J.C. argued that disclosure would cause a " 'clearly defined and serious injury to [him] and his family' " and that " 'to allow this case to proceed without a protective order will most likely result in public dissemination of baseless and/or meritless allegations of sexual misconduct and further damage to the lives, reputations and dignity of defendant J.C. and his family.' " *T.S.R. v. J.C.*, 288 N.J. Super. at 58, 671 A.2d at 1073-74. Relying on federal case law and another recent New Jersey case, *A.B.C. Corp. v. X.Y.Z. Corp.*, 282 N.J. Super. 494, 660 A.2d 1199 (1995), the court flatly rejected J.C.'s arguments. The court noted that in *A.B.C. Corp. v. X.Y.Z. Corp.*, it was stated:

" 'Court proceedings are public proceedings and the names of the parties and their addresses are essential not only to identify the various parties, but also in connection with aspects of the

judicial process such as discovery, motion practice, jury selection, and execution to enforce money judgment. As a corollary, proper identification of a party assures against misidentification of some other party as being involved.' " *T.S.R. v. J.C.*, 288 N.J. Super. at 57, 671 A.2d at 1072, quoting *A.B.C. Corp. v. X.Y.Z. Corp.*, 282 N.J. Super. at 499, 660 A.2d at 1201.

In specific response to J.C.'s arguments that public allegations of sexual abuse would embarrass or stigmatize him and his family, the majority stated:

> "If, as J.C. suggests, these mere accusations are tantamount to an irreparable injury sufficient to outweigh the public's interests in open proceedings, then he is really asking us to effectively grant all defendants accused of sexual abuse in civil cases the right to defend anonymously, a result which hardly comports with a philosophy granting anonymity only in rare circumstances." *T.S.R. v. J.C.*, 288 N.J. Super. at 58, 671 A.2d at 1074.

While the dissenting justice disagreed, the majority was not persuaded by J.C.'s argument that plaintiffs acted in bad faith by seeking public disclosure in order to push defendants into a settlement. *T.S.R. v. J.C.*, 288 N.J. Super. at 60-61, 65, 671 A.2d at 1074, 1077. Instead, the court considered several other reasons for disclosure as having more weight. The majority noted that as a minister, J.C. "might well be considered to have responsibility to the public equivalent to a doctor or lawyer." *T.S.R. v. J.C.*, 288 N.J. Super. at 60, 671 A.2d at 1074. The majority was also concerned with the fact that J.C. may have acted criminally or in violation of professional ethics, and noted that the church had already disseminated information to some of its congregation about the allegations. *T.S.R. v. J.C.*, 288 N.J. Super. at 59, 671 A.2d at 1074. The court felt that disclosure would eliminate the danger that another individual would be wrongfully thought of as involved, and the court also expressed confidence in our judicial system that public proceedings, if they involve "baseless" allegations, are "designed to lead to public exoneration." *T.S.R. v. J.C.*, 288 N.J. Super. at 60, 671 A.2d at 1075.

■ Turning back to the case at hand, defendant's arguments are virtually identical to those presented by the minister in the New Jersey case discussed above. Defendant urges that he has shown "good cause" under section 2—401(e) to require that the parties proceed under fictitious names in this suit. 735 5/2—401(e) (West 1992). "Good cause" is not defined by the statute, and a look at the legislative history of House Bill 474, in which subsection (e) was proposed, reveals only one statement made about the provision during legislative debates. Representative Slater stated that, among

other changes to the Code, the bill "provides that the parties to a civil action may appear under a fictitious name for good cause shown." 85th Ill. Gen. Assem., House Proceedings, June 30, 1987, at 238. As stated earlier, "good cause" under section 2—401(e) is not discussed by any Illinois case. The cases nationwide that discuss the conditions under which anonymity is usually granted, however, look to whether the party seeking to use a pseudonym has shown a privacy interest that outweighs the public's interest in open judicial proceedings. These situations have been described as "exceptional" and involving matters of a highly personal nature, such as abortion, adoption, sexual orientation, and religion.

In our research of other jurisdictions, *T.S.R. v. J.C.*, 288 N.J. Super. 48, 671 A.2d 1068 (1996), is the most factually similar case we have found, and, although it is clearly not binding, we find the majority's reasoning to be persuasive. As in *T.R.S. v. J.C.*, it is difficult to see how defendant has set himself apart from any individual who may be named as a defendant in a civil suit for damages. It seems to this court that any doctor sued for medical malpractice, any lawyer sued for legal malpractice, or any individual sued for sexual molestation can assert that the plaintiff's allegations will cause harm to his reputation, embarrassment and stress among his family members, and damage to his business as a result of the litigation. Any such doctor or lawyer can also assert that the plaintiff's act of naming him as a defendant is a bad-faith tactic to induce settlement and reap economic gain at the defendant's expense through baseless allegations. Here, we cannot say that potential damage caused by these allegations to defendant's reputation, personally or professionally, amounts to a protectable privacy interest. Nor has defendant demonstrated a privacy interest through his repeated assertions that plaintiff's allegations, if disclosed, will cause "severe and imminent harm to [his] family." Courts have consistently rejected such arguments. *Doe v. Frank*, 951 F.2d at 323; *Coe v. United States District Court*, 676 F.2d at 417; *Southern Methodist University v. Wynne & Jaffe*, 599 F.2d at 713; *T.S.R. v. J.C.*, 288 N.J. Super. at 55, 671 A.2d at 1072. In agreement with these decisions, we find that defendant has failed to demonstrate "good cause" to proceed under a fictitious name pursuant to section 2—401(e).

Moreover, we see absolutely no reason to compel plaintiff to proceed under a fictitious name, at defendant's request, when she is proceeding as an adult and has requested to spread her name of record. Defendant makes much of the fact that plaintiff originally filed the complaint under fictitious names. Yet, as the court stated in *Doe v. Diocese Corp.*, "[t]he fact that pseudonym status has been given to

one party does not mean that the other party is entitled to identical treatment." *Doe v. Diocese Corp.*, 43 Conn. Supp. at 162-63, 647 A.2d at 1073. Certainly, a victim of sexual abuse seeking to proceed anonymously has concerns that differ from one accused of sexual abuse. Even more importantly, the public's interest in knowing that an individual is accused of sexual abuse is far greater than any interest on the part of the public that someone has been a victim of such abuse.

Additionally, defendant strongly accuses plaintiff of attempting to blackmail him by now seeking disclosure. Plaintiff claims, however, that she originally filed the complaint under fictitious names because while a settlement with defendant was imminent, so was "tort reform" legislation in Illinois. She states that she abided by defendant's request that she file the complaint under fictitious names. Both parties' briefs quote from alleged correspondence between them to support their respective positions, but none of these letters are in the record. Consequently, we can make no findings based on the above allegations.

Under the record before us, we see no reason to force plaintiff to continue using a pseudonym against her wishes. We also find that defendant has not demonstrated "good cause" to proceed under a fictitious name. In addition to the reasons set forth above, other concerns we have stem mainly from evidence in the record that defendant is a lawyer practicing in the Chicago area. The trial judge mentioned a legitimate consideration that without knowing defendant's identity, he could not make a determination as to whether he should recuse himself. Nor could any member of this court make such a determination. The parties also tell us that a criminal investigation into plaintiff's allegations was commenced, but they disagree as to whether the investigation continues. If plaintiff's allegations have merit, however, criminal liability and even an investigation by the Attorney Registration and Disciplinary Commission seem definite possibilities. A final point we make is that, with the parties having already revealed that defendant is plaintiff's uncle by marriage, a lawyer in the Chicago area, and the subject of a past or current criminal investigation, full disclosure of both parties' names eliminates the possibility that some other individual may be wrongly perceived as accused or involved in this litigation.

Consequently, for the reasons set forth above, we find that the trial court's orders prohibiting plaintiff from disclosing her name or the name of defendant in any further pleadings in this or other litigation amounted to an abuse of discretion. Accordingly, the judgment of the circuit court of Cook County is reversed and remanded

with directions to grant plaintiff leave to file an amended complaint substituting the parties' true names for the fictitious "Jane Doe" and "John Doe" designations.

Reversed and remanded with directions.

EGAN and RAKOWSKI, JJ., concur.