2014 IL App (1st) 140212


Nos. 1-14-0212, 14-0213, 14-0214, 14-0215, 14-0216, 14-0217, 14-0218, 14-0219,
14-0220, 14-0221, 14-0222, 14-0223, 14-0224
(Consolidated)

Opinion filed September 19, 2014


FIFTH DIVISION
_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JOHN DOE NO. 1 and JANE DOE NO. 1, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiffs-Appellees, | ) | of Cook County |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHWESTERN MEMORIAL HOSPITAL, a | ) | Nos.   13 L 9306 |
| Corporation, and NORTHWESTERN MEDICAL | ) | 13 L 9316 |
| FACULTY FOUNDATION, a Corporation, | ) | 13 L 9322 |
| | ) | 13 L 11395 |
| Defendants-Appellants | ) | 13 L 11396 |
| | ) | 13 L 11397 |
| (Northwestern Memorial Hospital, a Corporation, and | ) | 13 L 11398 |
| Northwestern Medical Faculty Foundation, a | ) | 13 L 11399 |
| Corporation, Third-Party Plaintiffs; Airgas USA, LLC; Dai | ) | 13 L 11401 |
| Scientific Equipment, Inc.; Cryosafe; Horizon Scientific, | ) | 13 L 11404 |
| Inc., d/b/a/ Cryosafe; Taylor-Wharton Cryogenics LLC; | ) | 13 L 11406 |
| Pacer Digital Systems, Inc.; and Phonetics, Inc., d/b/a | ) | 13 L 11408 |
| Sensaphone, Third-Party Defendants). | ) | 13 L 11409 |
| | ) | |
| | ) | |
| JOHN DOE NO. 7 and JANE DOE NO. 7, | ) | |
| | ) | The Honorable |
| Plaintiffs-Appellees, | ) | Irwin J. Solganick, |
| | ) | Judge presiding. |
| v. | ) | |

NORTHWESTERN MEMORIAL HOSPITAL, a Corporation, and NORTHWESTERN MEDICAL FACULTY FOUNDATION, a Corporation,

)
)
)
)
)

Defendants-Appellants

)
)

(Northwestern Memorial Hospital, a Corporation, and Northwestern Medical Faculty Foundation, a Corporation, Third-Party Plaintiffs; Airgas USA, LLC; Dai Scientific Equipment, Inc.; Cryosafe; Horizon Scientific, Inc., d/b/a/ Cryosafe; Taylor-Wharton Cryogenics LLC; Pacer Digital Systems, Inc.; and Phonetics, Inc., d/b/a Sensaphone, Third-Party Defendants).

)
)
)
)
)
)
)
)
)
)
)
)

JOHN DOE NO. 26,

)
)
)

Plaintiff-Appellee,

)
)
)

v.

)
)
)

NORTHWESTERN MEMORIAL HOSPITAL, a Corporation, and NORTHWESTERN MEDICAL FACULTY FOUNDATION, a Corporation,

)
)
)
)
)

Defendants-Appellants

)
)

(Northwestern Memorial Hospital, a Corporation, and Northwestern Medical Faculty Foundation, a Corporation, Third-Party Plaintiffs; Airgas USA, LLC; Dai Scientific Equipment, Inc.; Cryosafe; Horizon Scientific, Inc., d/b/a/ Cryosafe; Taylor-Wharton Cryogenics LLC; Pacer Digital Systems, Inc.; and Phonetics, Inc., d/b/a Sensaphone, Third-Party Defendants).

)
)
)
)
)
)
)
)
)
)
)
)

JOHN DOE NO. 41 and JANE DOE NO. 41,

)
)
)

Plaintiffs-Appellees,

)
)
)

v.

)
)
)

NORTHWESTERN MEMORIAL HOSPITAL, a Corporation, and NORTHWESTERN MEDICAL FACULTY FOUNDATION, a Corporation,

)
)
)
)

Defendants-Appellants                                                    )
                                                                        )
                                                                        )
(Northwestern Memorial Hospital, a Corporation, and                     )
Northwestern Medical Faculty Foundation, a                              )
Corporation, Third-Party Plaintiffs; Airgas USA, LLC; Dai               )
Scientific Equipment, Inc.; Cryosafe; Horizon Scientific,               )
Inc., d/b/a/ Cryosafe; Taylor-Wharton Cryogenics LLC;                   )
Pacer Digital Systems, Inc.; and Phonetics, Inc., d/b/a                  )
Sensaphone, Third-Party Defendants).                                    )
                                                                        )

JOHN DOE NO. 42,                                                        )
                                                                        )
        Plaintiff-Appellee,                                             )
                                                                        )
v.                                                                      )
                                                                        )
NORTHWESTERN MEMORIAL HOSPITAL, a                                       )
Corporation, and NORTHWESTERN MEDICAL                                   )
FACULTY FOUNDATION, a Corporation,                                      )
                                                                        )
        Defendants-Appellants                                          )
                                                                        )
(Northwestern Memorial Hospital, a Corporation, and                     )
Northwestern Medical Faculty Foundation, a                              )
Corporation, Third-Party Plaintiffs; Airgas USA, LLC; Dai               )
Scientific Equipment, Inc.; Cryosafe; Horizon Scientific,               )
Inc., d/b/a/ Cryosafe; Taylor-Wharton Cryogenics LLC;                   )
Pacer Digital Systems, Inc.; and Phonetics, Inc., d/b/a                  )
Sensaphone, Third-Party Defendants).                                    )
                                                                        )

JOHN DOE NO. 43,                                                        )
                                                                        )
        Plaintiff-Appellee,                                             )
                                                                        )
v.                                                                      )
                                                                        )
NORTHWESTERN MEMORIAL HOSPITAL, a                                       )
Corporation, and NORTHWESTERN MEDICAL                                   )
FACULTY FOUNDATION, a Corporation,                                      )
                                                                        )
        Defendants-Appellants                                          )
                                                                        )
(Northwestern Memorial Hospital, a Corporation, and                     )

Northwestern Medical Faculty Foundation, a Corporation, Third-Party Plaintiffs; Airgas USA, LLC; Dai Scientific Equipment, Inc.; Cryosafe; Horizon Scientific, Inc., d/b/a/ Cryosafe; Taylor-Wharton Cryogenics LLC; Pacer Digital Systems, Inc.; and Phonetics, Inc., d/b/a Sensaphone, Third-Party Defendants).

JOHN DOE NO. 44,

      Plaintiff-Appellee,

v.

NORTHWESTERN MEMORIAL HOSPITAL, a Corporation, and NORTHWESTERN MEDICAL FACULTY FOUNDATION, a Corporation,

      Defendants-Appellants

(Northwestern Memorial Hospital, a Corporation, and Northwestern Medical Faculty Foundation, a Corporation, Third-Party Plaintiffs; Airgas USA, LLC; Dai Scientific Equipment, Inc.; Cryosafe; Horizon Scientific, Inc., d/b/a/ Cryosafe; Taylor-Wharton Cryogenics LLC; Pacer Digital Systems, Inc.; and Phonetics, Inc., d/b/a Sensaphone, Third-Party Defendants).

JOHN DOE NO. 45 and JANE DOE NO. 45,

      Plaintiffs-Appellees,

v.

NORTHWESTERN MEMORIAL HOSPITAL, a Corporation, and NORTHWESTERN MEDICAL FACULTY FOUNDATION, a Corporation,

      Defendants-Appellants

(Northwestern Memorial Hospital, a Corporation, and Northwestern Medical Faculty Foundation, a Corporation, Third-Party Plaintiffs; Airgas USA, LLC; Dai Scientific Equipment, Inc.; Cryosafe; Horizon Scientific, Inc., d/b/a/ Cryosafe; Taylor-Wharton Cryogenics LLC;

Pacer Digital Systems, Inc.; and Phonetics, Inc., d/b/a
Sensaphone, Third-Party Defendants).                )
                                                     )
———————————————————————————————                       )
                                                     )
JOHN DOE NO. 46,                                     )
                                                     )
     Plaintiff-Appellee,     )
                                                     )
v.                                                   )
                                                     )
NORTHWESTERN MEMORIAL HOSPITAL, a                    )
Corporation, and NORTHWESTERN MEDICAL               )
FACULTY FOUNDATION, a Corporation,                   )
                                                     )
     Defendants-Appellants    )
                                                     )
(Northwestern Memorial Hospital, a Corporation, and  )
Northwestern Medical Faculty Foundation, a           )
Corporation, Third-Party Plaintiffs; Airgas USA, LLC; Dai )
Scientific Equipment, Inc.; Cryosafe; Horizon Scientific, )
Inc., d/b/a/ Cryosafe; Taylor-Wharton Cryogenics LLC; )
Pacer Digital Systems, Inc.; and Phonetics, Inc., d/b/a )
Sensaphone, Third-Party Defendants).                 )
                                                     )
———————————————————————————————                       )
                                                     )
JOHN DOE NO. 47 and JANE DOE NO. 47,                 )
                                                     )
     Plaintiffs-Appellees,    )
                                                     )
v.                                                   )
                                                     )
NORTHWESTERN MEMORIAL HOSPITAL, a                    )
Corporation, and NORTHWESTERN MEDICAL               )
FACULTY FOUNDATION, a Corporation,                   )
                                                     )
     Defendants-Appellants    )
                                                     )
(Northwestern Memorial Hospital, a Corporation, and  )
Northwestern Medical Faculty Foundation, a           )
Corporation, Third-Party Plaintiffs; Airgas USA, LLC; Dai )
Scientific Equipment, Inc.; Cryosafe; Horizon Scientific, )
Inc., d/b/a/ Cryosafe; Taylor-Wharton Cryogenics LLC; )
Pacer Digital Systems, Inc.; and Phonetics, Inc., d/b/a )
Sensaphone, Third-Party Defendants).                 )
                                                     )
———————————————————————————————                       )

JOHN DOE NO. 48,                                                                    )
                                                                                   )
     Plaintiff-Appellee,                                 )
                                                                                   )
v.                                                                                 )
                                                                                   )
NORTHWESTERN MEMORIAL HOSPITAL, a                                                  )
Corporation, and NORTHWESTERN MEDICAL                                              )
FACULTY FOUNDATION, a Corporation,                                                 )
                                                                                   )
     Defendants-Appellants                              )
                                                                                   )
(Northwestern Memorial Hospital, a Corporation, and                                )
Northwestern Medical Faculty Foundation, a                                         )
Corporation, Third-Party Plaintiffs; Airgas USA, LLC; Dai                          )
Scientific Equipment, Inc.; Cryosafe; Horizon Scientific,                          )
Inc., d/b/a/ Cryosafe; Taylor-Wharton Cryogenics LLC;                              )
Pacer Digital Systems, Inc.; and Phonetics, Inc., d/b/a                            )
Sensaphone, Third-Party Defendants).                                               )
                                                                                   )

JOHN DOE NO. 49,                                                                    )
                                                                                   )
     Plaintiff-Appellee,                                 )
                                                                                   )
v.                                                                                 )
                                                                                   )
NORTHWESTERN MEMORIAL HOSPITAL, a                                                  )
Corporation, and NORTHWESTERN MEDICAL                                              )
FACULTY FOUNDATION, a Corporation,                                                 )
                                                                                   )
     Defendants-Appellants                              )
                                                                                   )
(Northwestern Memorial Hospital, a Corporation, and                                )
Northwestern Medical Faculty Foundation, a                                         )
Corporation, Third-Party Plaintiffs; Airgas USA, LLC; Dai                          )
Scientific Equipment, Inc.; Cryosafe; Horizon Scientific,                          )
Inc., d/b/a/ Cryosafe; Taylor-Wharton Cryogenics LLC;                              )
Pacer Digital Systems, Inc.; and Phonetics, Inc., d/b/a                            )
Sensaphone, Third-Party Defendants).                                               )
                                                                                   )

JOHN DOE NO. 50,                                                                    )
                                                                                   )
     Plaintiff-Appellee,                                 )

v.                                                                    )
                                                                     )
                                                                     )
NORTHWESTERN MEMORIAL HOSPITAL, a                                    )
Corporation, and NORTHWESTERN MEDICAL                                )
FACULTY FOUNDATION, a Corporation,                                   )
                                                                     )
     Defendants-Appellants                  )
                                                                     )
(Northwestern Memorial Hospital, a Corporation, and                  )
Northwestern Medical Faculty Foundation, a                           )
Corporation, Third-Party Plaintiffs; Airgas USA, LLC; Dai            )
Scientific Equipment, Inc.; Cryosafe; Horizon Scientific,            )
Inc., d/b/a/ Cryosafe; Taylor-Wharton Cryogenics LLC;                )
Pacer Digital Systems, Inc.; and Phonetics, Inc., d/b/a              )
Sensaphone, Third-Party Defendants).                                 )

PRESIDING JUSTICE Palmer delivered the judgment of the court, with opinion. Justices Gordon and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs John Doe No. 1 and Jane Doe No. 1 (JJ Doe 1), John Doe No. 7 and Jane Doe No. 7 (JJ Doe 7), John Doe. No. 26 (Doe 26), John Doe No. 41 and Jane Doe No. 41 (JJ Doe 41), John Doe. No. 42 (Doe 42), John Doe. No. 43 (Doe 43), John Doe. No. 44 (Doe 44), John Doe No. 45 and Jane Doe No. 45 (JJ Doe 45), John Doe. No. 46 (Doe 46), John Doe No. 47 and Jane Doe No. 47 (JJ Doe 47), John Doe. No. 48 (Doe 48), John Doe. No. 49 (Doe 49) and John Doe. No. 50 (Doe 50) filed negligence complaints against defendants Northwestern Memorial Hospital (NMH) and Northwestern Medical Faculty Foundation (NMFF). Plaintiffs had obtained leave of court to appear under fictitious names pursuant to section 2-401(e) of the Illinois Code of Civil Procedure (735 ILCS 5/2-401(e) (West 2012)). Defendants moved to vacate the orders granting such leave and for dismissal of the complaints. The court denied the motions. Defendants appeal, arguing (1) the court abused its discretion in ruling that plaintiffs demonstrated good cause to proceed anonymously, (2) plaintiffs obtained the orders granting leave to proceed anonymously by improper means, and (3) several plaintiffs

waived their right to proceed anonymously by virtue of their counsel's press announcements regarding the law suit. We affirm.

¶ 2                                              BACKGROUND

¶ 3          In April 2012, a cryogenic tank at NMH and/or NMFF failed, causing the loss of or damage to the semen and testicular tissue stored inside the tanks. Defendants notified the men whose semen or testicular tissue was stored in the tank of the loss.

¶ 4          In July 2012, plaintiffs' future counsel filed an emergency bill of discovery in the Chancery division of the circuit court, initiating presuit discovery with defendants on behalf of petitioners whose semen or testicular tissue was destroyed as a result of the failure of the tank. The petition was filed using fictitious names to identify the petitioners. By agreement of the parties, the chancery court granted the bill of discovery two days later. In January 2013, the chancery court transferred all matters relating to the failure of the cryogenic tank to the law division of the circuit court.

¶ 5          On January 25, 2013, Judge Maddux, presiding judge of the law division, issued an order on the court's own motion "determining that numerous cases may potentially be filed arising from the [cryogenic tank cases]" and ordering:

> "Due to the necessity for extensive pretrial activity, the requirement for intensive judicial supervision, and the need to manage these cases in an organized and uniform fashion, these cases [listing three cases] and all future cases filed in the Law Division *** arising out of the captioned incident [*In re. Northwestern Cryogenic Tank Cases*], are assigned to Judge Thomas L. Hogan."[1]

He ordered that "[t]hese assignments will be for all pretrial matters pursuant to General Administrative Order 91-4(1.4)" and "[a]ll previous assignments or future court dates of

---

    [1] Generally, this court does not refer by name to the circuit court judge who entered an order challenged on appeal. However, we depart from this procedure here as defendants challenge plaintiffs' decisions to seek leave to appear under fictitious names from a judge (Judge Maddux) other than the judge previously assigned to supervise all cases arising from the failure of the cryogenic tank (Judge Hogan). This scenario would be difficult to explain without reference to the specific judges.

any case pending in the Law Division arising from the above captioned incident are stricken."

¶ 6      On August 20, 2013, 40 men whose semen and/or testicular tissue had been destroyed by the failure of the tank filed motions pursuant to section 2-401(e) for "leave to appear under fictitious name(s)" in complaints against defendants.[2] They sought such leave from Judge Maddux, not from Judge Hogan, and did not provide notice to defendants. Judge Maddux granted such leave on the same day and ordered that the plaintiffs file under seal a second complaint "with their names" and that these complaints remain under seal until further order of court.

¶ 7      The men each filed a complaint against defendants. Some of the men filed individually and others filed with their female partners. They used fictitious names in the captions of the complaints, identifying the plaintiffs as either "John Doe No. [numerical]" or "John Doe No. [numerical] and Jane Doe No. [same numerical]." They also filed their motions for leave to appear under fictitious names.

¶ 8      In their individual motions for leave to appear under fictitious names, each plaintiff asserted that, as a result of the loss and/or damage to the semen and testicular tissue, he intended to file suit against defendants. Each requested leave to appear under a fictitious name "in order to protect [her or her] identify throughout the course of the proceedings." All asserted that:

> "[Their] interest in protecting [their] identity[ies] and not disclosing to the public that John Doe No. [numerical] had semen/testicular tissue stored with the plan of becoming a parent in the future through assisted reproductive techniques certainly outweighs any interest in the public's knowing the [plaintiff's/plaintiffs'] name[(s)]."

Some of the plaintiffs asserted:

> "This is particularly true given the sensitive nature of the medical treatment JOHN DOE NO. [numerical] had and the reproductive

---

[2] Section 2-401(e) provides that "[u]pon application and for good cause shown the parties may appear under fictitious names." 735 ILCS 5/2-401(e) (West 2012).

procedures that plaintiff was contemplating, had the defendants' cryopreservation system not failed"

Others asserted some variation of the following:

"This is particularly true given the disease plaintiff suffers from, the medical treatment he receives[(ed)] and the sensitive nature of the reproductive procedure(s) that plaintiff was contemplating, had the defendants' cryopreservation system not failed."

¶ 9        Of the 40 cases, only the 3 initiated by JJ Doe 1, JJ Doe 7 and Doe 26 are relevant here.[3] In their motions for leave to appear under fictitious names, JJ Doe 1 claimed they undertook the cryogenic preservation because such was recommended by NMFF, JJ Doe 7 because Doe 7 was suffering from acute lymphoblastic leukemia and Doe 26 because he was suffering from Ewing's sarcoma "and the drastic and sensitive treatment that disease required."

¶ 10       The plaintiffs served defendants with the complaints with the fictitious names in the captions. Although not included in the record, the parties agree that the plaintiffs also filed complaints under seal in which the plaintiffs are identified by name. The plaintiffs did not notify defendants of the orders granting them leave to appear under fictitious names.

¶ 11       Also on August 20, 2013, after filing the complaints, the plaintiffs' counsel issued a press release and held a press conference describing the lawsuits arising from the failure of the cryogenic tank. Counsel did not name the plaintiffs but identified several of them by age and the medical condition that could render them infertile. A flurry of print and electronic coverage of the lawsuits ensued.

¶ 12       In September 2013, defendants filed a "joint motion to dismiss" the three complaints. They argued the plaintiffs had not sought leave of court to file the actions under fictitious names, lacked "good cause" for anonymity under section 2-401(e) and had waived their right to anonymity when their counsel publicized their personal information on the press release. On October 3, 2013, Judge Hogan entered an order

---

        [3] In their brief on appeal, defendants state that they did not challenge the anonymity filings in cases in which the plaintiffs were minors.

denying defendants' motion "with respect to the failure to obtain leave of court" and setting a briefing schedule as to the other grounds raised in the motion, continuing the case until November 15, 2013.

¶ 13    On October 15, 2013, another 10 men, individually or with their female partners, obtained leave of court to proceed under fictitious names in negligence complaints against defendants for the destruction of their semen and/or testicular tissue arising from the failure of the cryogenic tank. As before, they presented the motions to Judge Maddux rather than Judge Hogan and did not give defendants notice of the motions.

¶ 14    The motions were almost identical to the August 20, 2013, motions filed by the earlier plaintiffs. In the motions, JJ Doe 41, JJ Doe 45 and Doe 48 asserted they undertook the cryogenic preservation because NMFF recommended it. Doe 42 and Doe 46 asserted they undertook the preservation because they were suffering from testicular cancer and the drastic and sensitive treatment that disease required. Doe 43 and Doe 49 asserted they undertook the preservation because they were suffering from Hodgkin's lymphoma and the drastic and sensitive treatment that disease required. Doe 44 undertook it because he was suffering from colon cancer and the drastic and sensitive treatment that disease required, JJ Doe 47 because Doe 47 was suffering from brain cancer and the drastic and sensitive treatment that disease required and Doe 50 because he was suffering from prostate cancer and the drastic and sensitive treatment that disease required.

¶ 15    Judge Maddux granted the motions on the same day and ordered that complaints with the plaintiffs' names be filed under seal. The plaintiffs filed complaints against defendants using fictitious names in the captions that day and copies of the motions. The parties agree that the plaintiffs also filed complaints under seal in which the plaintiffs are identified by name. The plaintiffs gave notice to defendants of the October 15, 2013, orders granting them leave to file complaints under fictitious names and served defendants with the complaints.

¶ 16    On November 13, 2013, defendants filed a "joint motion to vacate anonymity orders and motion to dismiss." They requested that the court vacate its August 20, 2013, and October 15, 2013, orders granting plaintiffs JJ Doe 1, JJ Doe 7, Doe 26, JJ

Doe 41, Doe 42, Doe 43, Doe 44, JJ Doe 45, Doe 46, JJ Doe 47, Doe 48, Doe 49 and Doe 50 (collectively plaintiffs) leave to proceed anonymously and dismiss plaintiffs' complaints pursuant to section 2-401(e). Defendants argued the orders granting the motions should be vacated because plaintiffs' "surreptitious conduct" in obtaining leave to file under fictitious names violated due process. They asserted that, although plaintiffs' counsel knew who defendants and defense counsel were, having worked with them since July 2012 on pretrial discovery matters relating to the cryogenic tank, plaintiffs filed their motions for leave to appear under fictitious name*s* "*ex parte*," without notice to defendants or defendants' counsel, and in front of Judge Maddux rather than Judge Hogan, the judge assigned by Judge Maddux on January 15, 2013, to preside over all matters pertaining to the cryogenic tank disputes.

¶ 17 Defendants argued that plaintiffs' motions for leave to appear under fictitious names were defective because plaintiffs proceeded in secret and in the wrong courtroom, thus denying defendants the opportunity to voice their objections to the plaintiffs proceeding anonymously and the public of its right to open and transparent legal proceedings. They asserted the orders were voidable because they were entered in violation of the court's order requiring all matters related to the failure of the cryogenic tank to be heard by Judge Hogan. They also asserted the orders were void *ab initio* because the court entered the orders before obtaining personal jurisdiction over defendants, before defendants were served with notice. They asserted that, as the orders were void, the complaints should be dismissed.

¶ 18 Defendants also argued that the orders should be vacated and the complaints dismissed because the medical claims advanced by plaintiffs, the alleged "sensitive nature" of their medical conditions and treatments, did not rise to the level of "exceptional circumstance" necessary to justify proceeding anonymously. They lastly argued that JJ Doe 1, JJ Doe 7 and Doe 26 waived anonymity by virtue of their counsel's August 20, 2013, press release containing personal information about them.

¶ 19 On November 19, 2013, the court, Judge Maddux presiding, held a hearing on defendants' joint motion to vacate and dismiss. During the hearing, in response to defendants' argument that they had been denied due process when plaintiffs moved to proceed fictitiously without giving them notice, the court stated it would vacate the two

orders granting leave to proceed fictitiously, allow the parties to file "whatever they want *** in opposition and in favor of the suppression of identity" and have a hearing so that defendants could receive their due process. Asked what its order would do to the pleadings already on file, *i.e.*, the complaints filed using fictitious names in the caption, the court responded "whether that will proceed under that caption is what the issue's going to be." The court then entered an order vacating its August 20, 2013, and October 15, 2013, orders. It entered a briefing schedule "on the remainder of defendants' motion," ordered plaintiffs to file a response and defendants to file a reply and set a January 2014 date for hearing and ruling on the remainder of the motion.

¶ 20    Although plaintiffs filed a response to the joint motion, it is not included in the record on appeal.[4]

¶ 21    Defendants filed a "reply in support of motion to dismiss," arguing plaintiffs should not be granted leave to proceed under fictitious names because plaintiffs failed to demonstrate the "good cause" required by section 2-401(e). They asserted plaintiffs failed to show that their circumstances were so exceptional that they justified a significant departure from the important public policy supporting public access to lawsuits in American courts of law. Defendants also expanded on their argument that JJ Doe 1, JJ Doe 7 and Doe 26 waived any right to proceed anonymously when their counsel issued a press release discussing their suits.

¶ 22    On January 7, 2014, the court, Judge Solganick presiding, heard argument on defendants' joint motion to vacate and dismiss. Plaintiffs raised the question of whether their procedure in obtaining leave to appear under fictitious names without notice to defendants was proper.[5] After giving defendants an opportunity to respond to the argument, the court found:

---

[4]   Defendants acknowledge in their opening brief that plaintiffs' response is not in the record. They inform us that by agreement of the parties, a copy will be provided in a supplemental record. Although a supplemental record has indeed been filed, it consists solely of copies of the complaints, motions for leave to appear under fictitious names and orders granting such leave to appear, presumably the exhibits attached to the response. There is, however, no copy of the response itself.

[5]   Defendants had pointed out to the court that Judge Maddux had vacated the orders granting leave to appear under fictitious names and the hearing was to be

"[Plaintiffs' counsel] is correct with regard to the procedure that's employed in Cook County in that if there's a complaint naming the parties, and if anonymity is granted, that complaint is filed under seal, and then the fictitious name complaint is filed and is scanned and is of record as the complaint that anybody would see when they go looking for the file ***.

But there is filed under seal -- if the court approves the petition filed prior to the complaint and filed with regard to using a John Doe designation, the complaint is filed under seal. But it's pre-suit. It's prior to the complaint being filed. I think [defendants'] argument with regard to that issue fails with regard to that respect."

¶ 23    Addressing waiver, having previously determined that plaintiffs' names were not mentioned in the press release, the court found that, merely because an attorney holds a press conference to discuss a case "and because he filed a suit in this type of case" does not mean his clients have waived their right to proceed under fictitious names. It stated, "[u]nless it's particularly labeled, they can proceed with the John Doe designation."

¶ 24    Addressing whether plaintiffs could proceed under fictitious names, the court found plaintiffs had "clearly demonstrated good cause" to proceed under fictitious names, stating:

---

regarding whether plaintiffs were entitled to an anonymity finding and whether they had waived anonymity by virtue of holding the press conference. They stated the parties had confined their response and reply to addressing these questions. We cannot know what plaintiffs argued in their response given that it is not included in the record. Defendants' reply is clearly confined to addressing whether plaintiffs showed the requisite "good cause" to appear under fictitious names and whether the press release operated as a waiver of any right to so appear. At the hearing, defendants raised only these arguments regarding failure to show good cause and waiver.

Plaintiffs, however, raised the question of whether they should have provided defendants with notice of the motions for leave to appear under fictitious names. Arguably, this question was not before the court as Judge Maddux had already decided it and ordered that the hearing would be on "the remainder" of defendants' motion, on "whether that [the complaints] will proceed under that caption is what the issue's going to be."

"The subject matter of this case involves plaintiff[s'] need to use assisted reproductive technology in order to have children. Plaintiff[s'] reproductive health is an extremely private and sensitive topic. And I think that's really been the issue. And I think that would allow the complaints to be filed under fictitious names.

Defendant[s'] motion to vacate the anonymity orders and motion to dismiss are denied."

Following the hearing, the court entered an order stating that the cause came to be heard on defendants' "joint motion to vacate and dismiss" but denying "defendants' motion to strike and dismiss."

¶ 25    On January 24, 2014, defendants filed notices of interlocutory appeal from the court's January 7, 2014, order and the August 20, 2013, and October 15, 2013, orders. They filed amended notices of appeal on February 6, 2014.

¶ 26                                ANALYSIS

¶ 27    Defendants raise three arguments on appeal. They assert the court abused its discretion in ruling that plaintiffs demonstrated "good cause" to appear under fictitious names pursuant to section 2-401(e), erred in approving the "*ex parte"* procedure plaintiffs employed to obtain leave to appear under fictitious names and abused its discretion in finding that the press release did not result in waiver of JJ Doe 1's, JJ Doe 7's and Doe 26's rights to appear under fictitious names.

¶ 28    Before we address these arguments, we address plaintiffs' contention that we lack jurisdiction to consider this appeal. Defendants appeal under Illinois Supreme Court Rule 307 (eff. Feb. 26, 2010). Rule 307 allows interlocutory appeals as of right of orders "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Feb 26, 2010). Plaintiffs argue that there are no injunctions here to appeal because, on November 19, 2013, the court vacated the injunctions entered on August 20, 2013, and October 15, 2013. They argue defendants are improperly attempting to appeal the merits of orders that have already been vacated. With regard to defendants' appeal from the January 7, 2014, order, plaintiffs

argue that denial of the motion to dismiss was not a final or appealable order, much less an interlocutory order appealable as of right under Rule 307.

¶ 29    There is no question that the August 20, 2013, and October 15, 2013, orders granting leave to appear under fictitious names were injunctions. "To determine what constitutes an appealable injunctive order under Rule 307(a)(1), we must look to the substance of the action, not its form." *Doe v. Doe*, 282 Ill. App. 3d 1078, 1081 (1996) (citing *In re A Minor*, 127 Ill. 2d 247, 260 (1989)). "Our court has *** described an injunction as 'a judicial process, by which a party is required to do a particular thing, or to refrain from doing a particular thing, according to the exigency of the writ, the most common sort of which operate as a restraint upon the party in the exercise of his real or supposed rights.' " *In re A Minor*, 127 Ill. 2d at 261 (quoting *Wangelin v. Goe,* 50 Ill. 459, 463 (1869)). "Actions of the circuit court having the force and effect of injunctions are still appealable even if called something else." *In re A Minor*, 127 Ill. 2d at 260. Here, in granting plaintiffs leave to appear under fictitious names, the court implicitly enjoined defendants from identifying plaintiffs by their actual names in any further pleadings. Accordingly, the trial court's orders had the force and effect of an injunction and were, therefore, appealable under Rule 307.

¶ 30    There is also no question that the court vacated those injunctions on November 19, 2013. However, the court reinstated the injunctions on January 7, 2014.

¶ 31    As plaintiffs' point out, the court's January 7, 2014, written order provides only that "defendants' motion to strike and dismiss" was denied. However, the court's oral pronouncements during the January 7, 2014, hearing show that, by its order, the court also denied defendants' motion to vacate the August 20, 2013, and October 15, 2013, injunctive orders and reinstated those orders. During the hearing, the court first reconsidered the question of whether the procedure plaintiffs employed in order to obtain the injunctions was proper. It found that defendants' assertion that the orders were void because plaintiffs failed to notify them of plaintiffs' intent to seek leave to appear under fictitious names "failed." Then, after determining that plaintiffs had shown good cause to be allowed the right to appear under fictitious names and had not waived that right by issuing the press release, the court stated it denied defendants' "[joint] motion to vacate the anonymity orders and motion to dismiss."

¶ 32 Taken together, the court's verbal proclamations that (1) defendants' argument that the orders were void because plaintiffs obtained them without notice "failed" and (2) defendants' "[joint] motion to vacate the anonymity orders and motion to dismiss" was denied show that the court considered and denied the entirety of defendants' joint motion, *i.e.*, both the motion to vacate the orders and the motion to dismiss the complaints, not just their motion to dismiss the complaints. "[A] court's oral pronouncement of its decision prevails over its written order, should a conflict arise." *In re William H.*, 407 Ill. App. 3d 858, 866 (2011). Therefore, the court's verbal statements show it did not just deny the motion to dismiss as stated in its written decision and as plaintiffs suggest on appeal. Rather, it also denied defendants' motion to vacate the August 20, 2013, and October 15, 2013, injunctive orders. By denying the motion to vacate the orders after finding the procedure to obtain the orders was proper, the court necessarily reinstated those orders. Since the court reinstated the injunctive orders, we have jurisdiction to consider the court's January 7, 2014, order denying defendants' joint motion to vacate those injunctions under Rule 307(a)(1). [6]

¶ 33 We now turn to defendants' arguments.

¶ 34 I. Good Cause

¶ 35 Defendants first argue that the trial court abused its discretion in ruling that plaintiffs demonstrated good cause to shield their identities pursuant to section 2-401(e). Section 2-401(c) of the Code provides that a "party shall set forth in the body of his or her pleading the names of all parties for and against whom relief is sought thereby." 735 ILCS 5/2-401(c) (West 2002). This "represents the principle that civil judicial proceedings are to be conducted in public." *A.P. v. M.E.E.*, 354 Ill. App. 3d 989, 1003 (2004). "Identifying the parties to a proceeding is an important dimension of publicness; the public has a right to know who is utilizing the courts that its tax dollars support." *Id.* "There are exceptions; fictitious names are allowed when necessary to

---

[6] As defendants point out, if plaintiffs are correct that we have no jurisdiction to consider this appeal because there are currently no orders enjoining defendants from using plaintiffs' names in effect, then plaintiffs have established that their cases cannot proceed anonymously and the complaints filed with the fictitious names in the captions must be dismissed.

protect the privacy of children, rape victims, and other particularly vulnerable parties or witnesses." *Id.* However:

"The privilege of suing or defending under pseudonyms should not be assumed or granted automatically even if an opposing party does not object. The use of pseudonyms is disfavored, and the judge has an independent duty [set forth in section 2-401(e)] to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in courts." *Id.* at 1002-03.

¶ 36    Section 2-401(e) provides that "[u]pon application and for good cause shown the parties may appear under fictitious names." 735 ILCS 5/2-401(e) (West 2012). The determination of whether a plaintiff has shown good cause under section 2-401(e) lies in the discretion of the trial court and we will not reverse the court's determination on a section 2-401(e) motion absent an abuse of that discretion. *Doe v. Doe*, 282 Ill. App. 3d 1078, 1089 (1996) (reversing trial court's orders upon finding court abused its discretion in prohibiting the plaintiff from disclosing her name or the name of the defendant in pleadings pursuant to section 2-401(e)). Here, the court found plaintiffs "clearly demonstrated good cause," stating:

"The subject matter of this case involves plaintiff[s'] need to use assisted reproductive technology in order to have children. Plaintiff[s'] reproductive health is an extremely private and sensitive topic. And I think that's really been the issue. And I think that would allow the complaints to be filed under fictitious names."

¶ 37    In plaintiffs' motions seeking leave to appear under fictitious names pursuant to section 2-401(e), they asserted:

"[Their] interest in protecting [their] identit[ies] and not disclosing to the public that John Doe No. [numerical] had semen/testicular tissue stored with the plan of becoming a parent in the future through assisted reproductive techniques certainly outweighs any interest in the public's knowing the [plaintiff's/plaintiffs'] name[(s)]."

They claimed that this was particularly true given the diseases from which the plaintiffs suffered and the sensitive nature of the medical treatments they had received and the reproductive procedures that they had undergone or were contemplating had the cryopreservation system not failed. JJ Doe 1, JJ Doe 41, JJ Doe 45 and Doe 48 claimed they undertook the cryogenic preservation because such was recommended by NMFF. The remaining plaintiffs asserted they undertook the cryogenic preservation because they were suffering from assorted medical conditions "and the drastic and sensitive treatment that disease required." They variously claimed that they were suffering from acute lymphoblastic leukemia (Doe 7), Ewing's Sarcoma (Doe 26), testicular cancer (Doe 42 and Doe 46), Hodgkin's Lymphoma (Doe 43 and Doe 49), colon cancer (Doe 44), brain cancer (Doe 47) and prostate cancer (Doe 50). The court granted the motions, finding plaintiffs showed good cause to appear under fictitious names.

¶ 38    Defendants argue that the court misconstrued the judicial framework applicable to plaintiffs' requests to conceal their identities and diminished the important public policy supporting public access to lawsuits that proceed in American courts. They assert that the fact that a lawsuit involves allegations relating to a party's reproductive health or refers to a party's treatment for a medical condition such as cancer does not justify the use of a fictitious name. Defendants posit that interpreting section 2-401(e) to allow any party with an alleged reproductive health issue or undergoing treatment for a serious medical condition to proceed under a fictitious name would vastly expand the number of anonymous filings in Illinois and directly contradict this court's holding in *Doe v. Doe*, 282 Ill. App. 3d 1078, 1085 (1996), that anonymity is reserved only for "exceptional cases." They assert that, "[w]hile individuals may prefer to keep their medical problems private and may be embarrassed by them, the involvement of serious medical issues in a lawsuit does not justify the use of fictitious names." Defendants argue that no reported decision in Illinois interprets section 2-401(e) to mean that a lawsuit involving a party's reproductive health or a party's underlying medical condition may be filed under a fictitious name and that, to the contrary, the court in *Doe v. Doe*, 282 Ill. App. 3d at 1084, held that "personal embarrassment or potential damage to future professional or economic well-being" is not a sufficient reason for an adult party to establish good cause pursuant to sections 2-401(e).

¶ 39    There are very few Illinois cases addressing the question of good cause under section 2-401(e) and, as defendants point out, none holding that a lawsuit involving a party's reproductive health or a party's underlying medical condition may be filed under a fictitious name. In *Doe*, 282 Ill. App. 3d at 1087, a case of first impression, the court carefully considered the question of "good cause" under section 2-401(e). After acknowledging that the statute does not define "good cause" and no Illinois decision had considered the question, Doe looked at cases in other jurisdictions discussing the conditions under which anonymity is usually granted. *Id*. It determined that these cases

> "look to whether the party seeking to use a pseudonym has shown a privacy interest that outweighs the public's interest in open judicial proceedings. These situations have been described as '*exceptional*' and involving matters *of a highly personal nature*, such as abortion, adoption, sexual orientation, and religion." (Emphasis added.) *Id.* at 1088.

¶ 40    The *Doe* plaintiff had filed a complaint against her uncle by marriage, alleging that he had sexually molested her over a period of six years. She was a minor when the abuse occurred but an adult when she filed the complaint. In her complaint, she identified herself as Jane Doe and the defendant as John Doe. The defendant filed an *ex parte* emergency motion seeking to prohibit the plaintiff from disclosing the defendant's name in any pleadings filed in the litigation or otherwise filing any type of lawsuit in which the defendant's true identify was disclosed. He argued that disclosing his true name or identity would cause him embarrassment, humiliation and detriment to his reputation in the community and profession and would cause severe damage to his wife and children. The trial court granted the motion, entering an order prohibiting the plaintiff from filing any other action disclosing the defendant's true name and from amending her complaint or filing any pleadings substituting the defendant's true name in place of the John Doe designation. It denied plaintiffs' emergency *ex parte* motion to vacate the order and her subsequent motion asking the court to spread her name of record and to require all pleadings to bear her correct name. In her interlocutory appeal, the plaintiff argued that potential damage to the defendant's reputation and alleged harm to member of his family was insufficient justification for the trial court's prohibiting her from disclosing her name or the defendant's identity.

¶ 41    The appellate court agreed and reversed. It held:

"[I]t is difficult to see how defendant has set himself apart from any individual who may be named as a defendant in a civil suit for damages. It seems to this court that any doctor sued for medical malpractice, any lawyer sued for legal malpractice, or any individual sued for sexual molestation can assert that the plaintiff's allegations will cause harm to his reputation, embarrassment and stress among his family members, and damage to his business as a result of the litigation. *** Here, we cannot say that potential damage caused by these allegations to defendant's reputation, personally or professionally, amounts to a protectable privacy interest. Nor has defendant demonstrated a privacy interest through his repeated assertions that plaintiff's allegations, if disclosed, will cause 'severe and imminent harm to [his] family.' Courts have consistently rejected these arguments. [Citations.] In agreement with these decisions, we find that defendant has failed to demonstrate 'good cause' to proceed under a fictitious name pursuant to section 2-401(e)." *Doe*, 282 Ill. App. 3d at 1088.

The court also found no reason to compel the plaintiff to proceed under a fictitious name when she was proceeding as an adult and had requested to spread her name of record.

¶ 42    We find plaintiffs here to be in a significantly different position than the parties in *Doe*. If plaintiffs' identities are disclosed here, not only will the public know the intimate details of plaintiffs' reproductive health and the treatment they are undergoing for medical conditions such as cancer, they will know that plaintiffs can no longer have biological children, that any hope plaintiffs had of having a biological child has been shattered. Plaintiffs' reproductive health is unquestionably an extremely private and sensitive topic. As pointed out in one of the many federal cases considering the question of appearing under a pseudonym, "the fact that a case involves a medical issue is not a sufficient reason for allowing the use of a fictitious name, even though many people are understandably secretive about their medical problems." *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 872 (7th Cir. 1997). However, the matter here is not, as defendants assert, merely a matter of individuals preferring to

keep their medical problems private and possibly being embarrassed by them. Here, those individuals' most basic human right, to have a biological child, has been irrevocably destroyed through no fault of their own. We can imagine few circumstances more devastating, more highly personal and more entitled to privacy. The court did not err in finding plaintiffs demonstrated good cause to grant their section 2-401(e) motions for leave to appear under fictitious names.

¶ 43    Defendants argue that upholding a finding of good cause here would establish a precedent permitting anonymity in most personal injury cases involving allegations of serious injury. We disagree. It is not plaintiffs' allegations of serious injury that warrant granting them leave to appear under fictitious names. It is the peculiar confluence of the circumstances underlying those injury allegations: their inability to have children naturally for a variety of medical, very personal, reasons, their planning for that eventuality by preserving semen and testicular tissue for future use in order to have children through assisted reproductive technology and the devastating loss of any hope they had of having biological children when the cryogenic tank failed through no fault of their own. The circumstances here are exceptional, the result of a confluence of factors that might never recur.

¶ 44    As noted above, "[t]he use of [pseudonyms] is disfavored," and the court has an independent duty under section 2-401(e) "to determine whether exceptional circumstances justify such a departure from the normal method of proceeding in courts." *Id.* The determination of whether a plaintiff's particular circumstances are "exceptional" must be made by the court on a case-by-case basis. This is not a simple case of medical negligence.  This is an exceptional situation, where plaintiffs facing grave health issues utilized the defendants' services to preserve their ability to reproduce with the intention that this would be done with their privacy maintained. The implicit details of the procedures involved in the plaintiffs' commitment to this process are highly personal in nature, including, in addition to the particular disease that led them to participate in the process, the steps necessary to obtain the semen and testicular tissues as well as the procedures necessary to achieve the later reproduction. These highly personal matters were never intended to see the light of publicity and defendants' alleged failure to adequately protect this biological material did not change that fact. It is uncontested that

plaintiffs have been damaged by the loss of the biological materials involved. Publicizing their identities along with the implicit details described above would only victimize them again. We hold that the trial court did not abuse its discretion in allowing plaintiffs to proceed under fictitious names.

¶ 45                                II. Procedure

¶ 46        Defendants next argue that the court erred in approving the procedure plaintiffs employed to obtain the orders granting leave to appear under fictitious names. They specifically challenge plaintiffs' failure to provide them or their counsel with notice of the motions and plaintiffs' presentation of the motions to Judge Maddux rather than to Judge Hogan, the judge assigned by Judge Maddux to supervise all matters arising out of the failure of the cryogenic tank. They assert plaintiffs' "*ex parte*" proceedings are prohibited by local court rules as well as fundamental concepts of due process. We find no error in the procedure plaintiffs' employed in presenting their section 2-401(e) motions and obtaining leave to appear under fictitious names.

¶ 47        We note initially that defendants' argument regarding the procedural unfairness of plaintiffs' presentation of the motions is arguably moot given that, after hearing the same arguments, the trial court vacated the August 2013 and October 2013 orders granting the motions and set a hearing on the motions in order that defendants receive the due process they claimed they were denied by plaintiffs' conduct. An appeal is moot where no actual controversy is presented or where the issues raised below have ceased to exist, such that a reviewing court cannot grant relief to the appellant. *In re Nicholas L.,* 407 Ill. App. 3d 1061, 1070 (2011). As a general rule, we "do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided." *In re Alfred H.H.,* 233 Ill. 2d 345, 351 (2009). However, the public interest exception to the mootness doctrine "allows a court to consider an otherwise moot case when (1) the question presented is of a public nature; (2) there is a need for an authoritative determination for the future guidance of public officers; and (3) there is a likelihood of future recurrence of the question." *In re Alfred H.H.,* 233 Ill. 2d at 355.

¶ 48 The question here meets all three requirements. It qualifies as a matter of a public nature because it involves compliance with supreme court and circuit court rules and with a statute, section 2-401(e). There is a need for an authoritative determination of this question given that no Illinois case has directly addressed the proper procedure to be used in seeking leave to appear under a fictitious name pursuant to section 2-401(e). Lastly, the likelihood of future recurrence of this question is a given since, as defendants point out, additional cases arising from the failure of the cryogenic tank have already been filed in the trial court using fictitious names to identify the plaintiffs. Accordingly, we address the question presented.

¶ 49 "Due process of law requires that a party be accorded procedural fairness, *i.e.,* given notice and an opportunity to be heard. [Citation.] Parties who have properly appeared in an action are entitled to notice of any impending motions or hearings." *Gredell v. Wyeth Laboratories, Inc.*, 346 Ill. App. 3d 51, 62 (2004). To that end, Cook County Circuit Court Rule 1.1(a) (eff. July 1, 1976) requires that, unless notice is excused, "[n]otice of all proceedings in an action shall be given to all parties who have appeared and have not been found by the Court to be in default." Cook County Circuit Court Rule 2.1(a) (eff. Aug. 21, 2000) requires that, "[e]xcept in actions appearing on the daily trial call or during the course of trial, written notice of the hearing of all motions shall be given to all parties who have appeared and have not theretofore been found by the court to be in default for failure to plead, and to all parties whose time to appear has not expired on the date of notice."

¶ 50 Pursuant to Cook County Circuit Court Rule 2.2(a) (eff. July 1, 1976), only "[e]mergency motions and motions which by law may be made ex parte may, in the discretion of the court, be heard without giving prior notice and without calling the motion for hearing." However:

"If a motion is heard without prior notice under this rule, written notice of the hearing of the motion, \*\*\* and the ruling of the court thereon, shall be served, by the attorney obtaining the order, upon all parties who have appeared and have not theretofore been found by the court to be in default for the failure to plead, and upon all parties whose time to appear had not expired on the date of hearing \*\*\*. Notice shall be given in the

manner and to the persons described in Supreme Court Rule 11." Cook Co. Cir. Ct R. 2.2(b) (eff. July 1, 1976).

Illinois Supreme Court Rule 11 (eff. July 1, 2013) provides that "[i]f a party is represented by an attorney of record, service shall be made upon the attorney. Otherwise service shall be made upon the party." *Ex parte* communications between a lawyer and a judge are expressly prohibited by the circuit court rules, "unless allowed by law, in connection with any matter pending before said judge."[7] Cook Co. Cir. Ct. R. 17.1. (eff. Feb. 1, 1985). A hearing is "*ex parte*" when it is "[o]n or from one party only, usu[ally] without notice to or argument from the adverse party." Black's Law Dictionary 597 (7th ed. 1999).

¶ 51        The crux of defendants' argument is that plaintiffs failed to comply with the notice procedures set forth in the supreme court and circuit court rules by failing to provide defendants with notice of the section 2-401(e) motions and obtaining the orders *ex parte*, thus denying defendants due process. Defendants were not entitled to notice. As the trial court noted, plaintiffs presented their motions and obtained leave to appear under fictitious names "pre-suit," *i.e.*, before they filed their complaints initiating the actions against defendants. Of course, it is implicit in the concept of proceeding anonymously by permission that the plaintiff would get permission to do so prior to the filing of the complaint. At the time plaintiffs presented their section 2-401(e) motions, defendants were not parties to any actions initiated by plaintiffs because plaintiffs had not yet initiated any actions against them.

---

[7] One such exception is set forth in Cook County Circuit Court Rule 17.4 (eff. Feb. 1, 1985), which provides that, "in civil cases with the express consent of all parties of record, a judge may communicate with fewer than all participants to promote settlement, for the purpose of scheduling or for any other similar purposes."

Should an unauthorized *ex parte* communication regarding a pending matter occur, the judge must disclose the circumstances and substance of the communication "to all parties of record at the next hearing in open court and, if a court reporter is available, on the record," and, "[i]f a hearing is not scheduled within two full court days of said communication, the lawyer who has initiated said communication shall promptly serve a written summary of the contents of said communication on all parties of record and the judge." Cook Co. Cir. Ct. R. 17.2 (eff. Feb. 1, 1985).

¶ 52    The supreme and circuit court rules refer to "party" but do not define the word. Therefore, "party" must be given its plain and ordinary meaning.

> "In connection with judicial proceedings[,] the term 'parties' is a technical word which has a precise meaning in legal parlance. It designates the opposing litigants in a judicial proceeding—the persons seeking to establish a right and those upon whom it is sought to impose a corresponding duty or liability ***." *Evans v. Stoval,* 83 Ill. App. 3d 257, 259-60 (1980) (quoting 59 Am. Jur. 2d *Parties* § 7 (1971)).

Black's Law Dictionary provides similarly, defining "party" as "[o]ne by and against whom a lawsuit is brought <a party to a lawsuit>." Black's Law Dictionary 1144 (7th ed. 1999). Accordingly, to be a party, a person or entity must necessarily initiate or be named in a lawsuit. At the time plaintiffs filed the motions, they had not initiated any lawsuits against defendants or named defendants in any action. Therefore, at the time plaintiffs presented the motions, defendants were not "parties" to any lawsuit initiated by plaintiffs. Because defendants were not parties to any suit related to the section 2-401(e) motions at the time plaintiffs presented the motions, defendants were not entitled to notice of the motions. In fact, it is unknown whether, had the motions been denied, plaintiffs would have filed the suits at all, in which case defendants were not and never would be parties in these actions.

¶ 53    Defendants argue that "Black's Law Dictionary does not define 'parties' to exclude individuals or entities who have been named in a complaint that has not yet been filed. Rather, the dictionary *** defines a 'party' as '[o]ne who takes part in a transaction ***.' Black's Law Dictionary 1231 (9th ed. 2009)." Black's Law Dictionary does contain this definition. However, this definition also includes the explanatory phrases "<a party to the contract>" and "[a] person who takes part in a legal transaction or proceeding is said to be a party to it." (Internal quotations omitted.) Black's Law Dictionary 1144 (7th ed. 1999). Defendants do not explain what "transaction" means in the context of the cases at bar or how this definition applies. Suffice it to say, at the time plaintiffs presented their motions seeking leave to appear under fictitious names, there were not only no complaints filed against defendants but also no "transactions" to which they and plaintiffs could arguably be considered parties. If our supreme court and the

Cook County circuit court had intended that *any* individual or entity with an interest in a matter be served notice of motions filed regarding the matter, we presume they would have used a word other than "party," which has a settled legal meaning.

¶ 54     Here, at the time plaintiffs presented the section 2-401(e) motions on August 20, 2013, and October 15, 2013, no actions/lawsuits related to the motions existed because plaintiffs had not yet filed the relevant complaints initiating the actions. Because no actions existed at the time plaintiffs filed the motions, defendants necessarily could not and did not appear in any actions related to the motions, could not be parties to nonexistent actions and, consequently, were not entitled to notice of the motions.

¶ 55     We see no significance in the fact that plaintiffs presented the section 2-401(e) motions to Judge Maddux, the presiding judge of the law division, rather than Judge Hogan. Accordingly, the court did not err in finding plaintiffs' procedure in presenting the section 2-401(e) motions for the court's approval without notice to defendants was proper.

¶ 56                                   III. Waiver

¶ 57     Defendants lastly argue that JJ Doe 1, JJ Doe 7 and Doe 26 waived their right to proceed under fictitious names. They assert that, "through the deliberate, strategic decision of their counsel to broadcast not only their allegations against defendants but also to provide identifying information such as their age and the specific medical condition that could affect fertility, [these] plaintiffs voluntarily and knowingly sought the spotlight for these claims [and] relinquished the right to use a pseudonym under section 2-401(e)." Defendants claim that, "even without stating the plaintiffs' names, their counsel repudiated the concept of anonymity and demonstrated that their [plaintiffs'] interest in publicly criticizing the defendants far outweighed their purported interest in privacy."

¶ 58     A party "may waive substantive rules of law, statutory rights, and even constitutional rights enacted for their benefit [citation], so long as the waiver is knowing, voluntary, and intentional." *In re Estate of Ferguson*, 313 Ill. App. 3d 931, 937 (2000). We agree with defendants that the press release and news conference were intended to generate interest in plaintiffs' lawsuits and "[seek] the spotlight for the claims." However,

we also find that neither the decision to issue a press release and hold a news conference regarding the lawsuits nor the contents of the press release and news conference operated as a knowing, voluntary and intentional waiver by any plaintiff of his or her right to appear in these lawsuits under a fictitious name.

¶ 59    In the press release, counsel explained the circumstances that led to the filing of the initial 40 lawsuits and identified defendants by name. He did not identify any plaintiff by name. Instead, he identified the 40 plaintiffs as men whose "sperm samples" were destroyed when the cryogenic tank failed, stating that "[m]ost of the plaintiffs have suffered illness or were undergoing medical treatment that would likely render them infertile" and preserving their sperm was likely their only hope for having biological children. He stated that three of the plaintiffs were minors, with the youngest being only 14 years old with a rare form of cancer, and the other plaintiffs included a 33-year-old man with leukemia, a 26-year-old man and a 48-year-old man, all of whom were undergoing treatments that could render them infertile. At no point did counsel disclose the name of any plaintiff and the few identifying features he provided regarding the plaintiffs are so generic that no personal identification can possibly be gleaned from these remarks. Not only did counsel not disclose the plaintiffs' names, he specifically stated in the press release that "[a]ll plaintiffs' identities are being protected due to the sensitive nature of the lawsuits and are filed under John Doe."

¶ 60    Newspaper articles reporting on the press conference show similarly that plaintiffs' counsel did not disclose any plaintiff's identity. For example, an August 21, 2013, article in the Chicago Tribune online newspaper quotes plaintiffs' counsel as stating that no plaintiffs would likely speak publicly about the lawsuits because of the " 'sensitivity and privacy of the subject matter.' " Michelle Manchir, *Lawsuits: Northwestern Memorial Damaged Sperm Samples*, Chicago Tribune, Aug. 21, 2013, http://articles.chicagotribune.com/2013-08-21/news/ct-met-40-northwestern-frozen-sperm-lawsuits-20130821_1_sperm-bank-sperm-samples-matthew-jenkins. Counsel is also quoted as telling reporters that " '[n]ot everybody wants the outside world, the local Chicago community, to know what sort of medical treatments they were going through, how tough chemo was and all those sorts of things, and that's why they all chose to file *** as John Does.' " Manchir, *supra*. Even though plaintiffs' counsel initiated the media

storm generated by the press conference and news release, he actively protected plaintiffs' identities throughout. Accordingly, we find no waiver by any plaintiff of his or her right to appear under a fictitious name, let alone that any plaintiff knowingly, voluntarily and intentionally waived such right. The court did not err in finding there was no waiver.

¶ 61                                  CONCLUSION

¶ 62        For the reasons stated above, we affirm the decision of the circuit court.

¶ 63        Affirmed.